W. M. Peatman, et al., Appellants, v. The Centerville Light, Heat and Power Company.

Corporations: SIGNATURE TO NOTE: *Secretary.* Under by laws
2 which require all contracts and agreements entered into by the corporation to be signed by the president, and also require the secretary to issue and countersign all orders drawn on the treasurer, the signature of the secretary is not essential to the validity of a note made by the corporation, and signed by the president.

Ultra vires act: *Consideration.* An indebtedness incurred by a
4 private corporation in excess of the authority conferred by its articles of incorporation, is, nevertheless, valid and enforceable to the extent of the consideration received therefor.

Mismanagement: PERMITTING DEFAULT TO BE TAKEN. Where the
3 minority of the stockholders of a corporation move for the appointment of a receiver, on the ground of mismanagement, in that the board of directors had authorized a defense to be made in an action on the corporation note, but that default was fraudulently made, fraud will not be presumed, where it is not shown that a defense could have been successfully made.

Same. The failure of corporation directors to do certain things, is not
7 a ground for the appointment of a receiver at the instance of a minority of the stockholders, where it does not appear that the things omitted could have been done with reasonable effort, with advantage to the company.

Remedy at law: *Equitable relief.* That stock was issued to the
5 corporation's secretary, at his instance, for which he had paid but twenty-five per cent. of the par value, is not a ground for equitable relief, when the creditors have an ample remedy to recover the balance due.

Majority and minority. The policy of a corporation cannot be dic-
6 tated by a minority of the stockholders, who think that the affairs

of the corporation are not being managed for the best interests of the stockholders, and that a different policy should be adopted.

*Courts of equity.* A court of equity will interfere with the manage-
6  ment of a majority of the stockholders of a corporation, at the instance of the minority, only, when such interference is absolutely necessary to the attainment of justice.

**Demurrer:** ADMISSION BY. While the facts alleged in a pleading
1  which was demurred to, must for the purpose of the demurrer, be taken as true, only such facts as are well pleaded, will be deemed to be admitted.

## *Appeal from Appanoose District Court.*—HON. T. M. FEE, Judge.

### FRIDAY, DECEMBER 11, 1896.

ACTION in equity for the appointment of a receiver, and for other relief.  A demurrer to the petition was sustained, and, the plaintiffs refusing to plead further, judgment was rendered in favor of the defendants for costs.  The plaintiffs appeal.—*Affirmed.*

*Porter & Porter* for appellants.

*Baker & Moore* for appellee.

ROBINSON, J.—This action was originally commenced by W. M. Peatman, as plaintiff, against the Centerville Light, Heat and Power Company and D. C. Campbell, as defendants.  Subsequently, ten persons, some of whom had been described in the petition as stockholders, filed an application, the body of which was in words as follows:  "We, the undersigned, ask to be made party plaintiffs, and unite in the prayer of the plaintiff for a receiver in said cause, and ask that our rights as stockholders be protected by the court."  By an amendment to the petition, the persons named in the application were made parties plaintiff.  Several amendments were made to the petition, and its allegations, as finally amended, show, substantially, the

following facts: The defendant company is a corporation organized under the laws of Iowa, its principal place of business being at Centerville. The plaintiff and persons named, most of whom afterwards became parties plaintiff, are the owners of about fifteen thousand dollars of the paid-up capital stock of the company, and "D. C., J. A., C. P., Jennie M., L. O., and Agnes Campbell; T. P., Elma, and M. N. Shontz claim to own and hold about eighteen thousand dollars of stock, all of said parties being non-residents of the state of Iowa, and all near relatives." The capital stock of the company is thirty-five thousand dollars, and the amount of the stock paid up is about thirty-four thousand dollars. The plaintiff, Peatman, is the secretary of the company, and has for five years performed all the duties of the office, and managed the company; and his services were reasonably worth four thousand five hundred dollars, all of which is alleged to be due and unpaid. The plaintiff owns six thousand dollars of the paid-up capital stock, and alleges that he is financially interested in the company in the sum of ten thousand five hundred dollars. The articles of incorporation provide that the indebtedness shall not at any time exceed one-half of the capital stock. However, on the first day of July, 1892, the company issued gold bonds on its property to the amount of fifty thousand dollars, and the petition alleges that it was done without right or authority. On the tenth day of August, 1894, a promissory note was issued to D. C. Campbell for the sum of twenty-one thousand three hundred and sixty-five dollars and forty cents. It was signed in the name of the company, "by T. P. Shontz, President," but it is alleged to have been illegal, because made without authority. To secure its payment, the gold bonds were deposited with the payee. In September, 1895, D. C. Campbell recovered judgment against the

company for the amount which appeared to be due on the note, and an execution, issued for the satisfaction of the judgment, was levied on all the property of the company, and it has been advertised for sale. The persons constituting the board of directors of the company are J. A. Campbell, C. P. Campbell, T. P. Shontz, S. W. Livingston, and the plaintiff Peatman. The petition further alleges that there is a conspiracy between the Campbells and Shontz to wreck the property of the company, and to defraud its creditors and stockholders. Shontz is a brother-in-law of the defendant Campbell, and J. A. and C. P. Campbell are his sons. Those three, and Livingston, who was appointed a director by them, are managing the affairs of the company. It is charged that notice of the action on the note described was served on Livingston only; that the directors instructed Shontz to act as attorney, or to employ an attorney to make defense to the note, and to an action brought by the First National Bank of Lima, Ohio; that, in pursuance of the conspiracy, Shontz employed counsel to defend against the bank, but failed to employ counsel to defend against Campbell, and, with fraudulent intent, permitted a default to be entered, well knowing that there was a good defense to the note. In 1893, there was due D. C. Campbell about one thousand three hundred dollars, as interest, "and, for the purpose of obtaining a controlling interest in the company, procured the issuing of about $5,200 worth of stock, by paying twenty-five cents on the dollar for said stock, for the purpose of controlling said company, and for the purpose of collecting an illegal indebtedness." It is further averred that the other stockholders paid the par value for their stock, and that it is a fraud on them to permit D. C. Campbell to vote as a shareholder. It is also alleged that the Campbells and Shontz have refused to consider an

offer for the purchase of the plant of the company; that the company is insolvent, but that, with proper management, its debts would be paid, and a dividend could be paid on the stock; that the directors refuse to make efforts to borrow money, and have aided the defendant Campbell, to recover his judgment, to cheat and defraud the minority stockholders. There are other less important averments in the petition, but the alleged fraud is finally stated to be as follows: "In truth and fact, the mismanagement consists in doing nothing to protect the minority, for the purpose of letting the same be sold by said Campbell, to absolutely own and control the property. The fraud consisted in purposely not doing anything to protect the valuable property." The plaintiffs ask that a receiver of the property of the company be appointed; that the judgment of the defendant, Campbell, be canceled, and the sale thereunder be restrained; that Campbell be required to deliver to the receiver, for cancellation, the bonds transferred to him as security; that the issue of the five thousand two hundred dollars stock to him be canceled; and for general equitable relief. The argument for the appellants is devoted almost wholly to the question of the power of the court to appoint a receiver to protect the interest of the minority stockholders against the fraud of the majority.

For the purposes of this case, it may be conceded that the power to appoint a receiver in such an action as this exists; and we are then required to determine whether the petition shows facts which would justify such an appointment. The averments of fraud and illegal action contained in the petition are numerous, but many of them are in the nature of conclusions, without a statement of facts upon which to base them, and may therefore be disregarded. The demurrer only admits facts which are well pleaded. The petition alleges that the note upon

which the judgment in question was rendered was made without authority, but the only defect alleged is that it should have been, but was not, signed by the secretary. The articles of incorporation authorize the company to establish such by-laws, rules, and regulations as shall be deemed necessary for the management of its business. The by-laws adopted require all contracts and agreements entered into by the company to be signed by the president, and also require the secretary to issue and countersign all orders drawn on the treasurer. The note made to the defendant Campbell was not an order drawn on the treasurer, but was a promissory note, and was sufficient with the signature of the president. Livingston, upon whom the notice of the action on the note was served, was a director of the company, and in actual control of its business. The board of directors authorized a defense to be made to the action, and the fact that none was made does not show that the default was fraudulent. It is not shown that a defense could have been successfully made, and, if it could not, it should not have been attempted. The petition fails to show that the judgment was illegal, or to set out any facts which would justify any interference with it.

If we understand the averments of the petition, it is claimed that the fifty thousand dollars in gold bonds are illegal, because issued in excess of the amount of indebtedness which was authorized by the articles of incorporation. It is not shown that the bonds were issued without consideration, and it is well settled that the indebtedness of a private corporation in excess of the limit fixed by the articles of incorporation is valid to the extent of the consideration received for it. *Heuer v. Carmichael*, 82 Iowa, 290 (47 N. W. Rep. 1034), and cases therein cited. Moreover, it is stated by the appellants in

argument, that the property of the company has been sold for the full amount of the Campbell judgment, with interest and costs. Campbell's interest in the bonds is therefore at an end, and it is not shown that he or any other person is likely to put them into circulation. Nor is sufficient ground shown for canceling the stock issued to the defendant Campbell. The averments in regard to it are ambiguous, but, assuming that it was issued at his instance, it is shown that he has paid for it twenty-five per cent. of its par value, at least; and, if anything remains unpaid, the company and its creditors have an ample remedy to recover the amount due. The real complaint which the plaintiffs make is that the affairs of the company are not managed for the best interests of its stockholders, and that a different policy should be adopted. But a minority of the stockholders cannot dictate the policy of a corporation, and no interference with its management in their behalf can be justified "unless such interference be absolutely necessary to the attainment of justice." 1 Morawetz Priv. Corp., section 281; 2 Cook, Stock and Stockholders and Corp. Law, section 746; Id. p. 1414, section 863.

The affairs of the defendant company are being managed by a board of five directors, four of whom seem to act harmoniously together. The fact that three of them are related to the defendant Campbell, while worthy of attention in connection with the charge of conspiracy and fraud, does not afford the plaintiffs any ground for relief. The charges of conspiracy and mismanagement are, on the whole, indefinite, and fail to show that the officers of the company are not discharging their duties with reasonable diligence. They are shown not to have done certain things, but it does not appear that the things omitted could have been done by reasonable

effort, with advantage to the company. We conclude that the facts well pleaded in the petition do not show any ground upon which the plaintiffs are entitled to relief in this action. The judgment of the district court is therefore AFFIRMED