In the Matter of the Assignment of the Mutual Guaranty Fire Insurance Company, A. E. Alvord, Claimant, Appellant, v. A. P. Barker, Assignee, and The Mutual Guaranty Fire Insurance Company, Appellees.

**Stock and Mutual Insurance.** The fact that a mutual insurance company incorporated under Code, 1873, section 1160, authorizing such companies to insure property of its members on the mutual plan, provides in its articles for a guaranty, to consist of shares issued to subscribers, does not make it a stock company.

**Membership.** One who insures his property in a mutual company in a stated amount, for a specific premium, does not thereby become a member.

**Policy: ultra vires.** Code, 1873, section 1160, authorizes persons to associate and make mutual pledges, and give valid obligations to each other, for their assurance from loss by fire, but prohibits such persons from insuring property not owned by members, and from receiving premiums and making dividends. *Held,* that a policy issued by such an association insuring property of one not a member, in consideration of a fixed premium, was a violation of statute and therefore void.

**Liability of members.** While the officers and directors of a mutual insurance company may be liable to one not a member whose property they wrongfully insured, for the loss sustained, the other members cannot be held liable therefor as partners.

**Estoppel.** Where a mutual insurance company issued a policy to one not a member, insuring his property for a fixed premium, in violation of the express provision of Code, 1873, section 1160, the company is not estopped from defending an action thereon on the ground of *ultra vires,* though it received and used the premium paid, since the insured will be presumed to have paid knowing that the contract was prohibited and that the company had no right to make it.

*Appeal from Clinton District Court.*—Hon. P. B. Wolfe, Judge.

Wednesday, January 18, 1899.

THIS is a proceeding to establish a claim against the assignee of the Mutual Guaranty Fire Insurance Company, growing out of a policy of insurance issued by said company in the year 1889. The assignee, among other things, pleaded that the company had no authority to issue the policy, and that the contract of insurance was and is illegal and void. To this the claimant pleaded an estoppel. The trial court disallowed the claim, and Alvord appeals.—*Affirmed.*

*Chase & Seaman* and *Edred S. James* for appellant.

*A. P. Barker* and *F. W. & L. A. Ellis* for appellees.

DEEMER, J.—The Mutual Guaranty Fire Insurance Company was organized in the year 1888. On the ninth day of August of that year, it filed its articles of incorporation, which stated, in substance, that certain persons, naming them, and all others who might associate with them and become members thereof, organized under the name hereinbefore stated, "to make insurance upon  *  *  *  property against loss or damage by fire,  *  *  *  upon the plan of mutual insurance." A guaranty fund of fifty thousand dollars, consisting of shares of one hundred dollars each, was also provided for, which was subject to increase, and which was to be secured by the obligations of the shareholders in such form as the board of directors should approve, and be subject to assessment from time to time to meet any deficiency that might arise in the advancements, assessments, and pledges made to pay losses and expenses. These assessments were to be treated as advancements to be repaid from the funds of the association. The articles further provided that the fund to pay losses and expenses should consist exclusively of moneys raised by advancements and assessments given by the members for their insurance, such assessments to be made by the board of directors or executive committee, and apportioned pro rata among the members insured. They also provided that all persons insured should be members

of the company during the life of their policies, and that charges for insurance should be regulated by the directors. Further provision was made for the adoption of by-laws, such as the directors might deem expedient for the conduct of the affairs of the company. The notice of incorporation stated that it was a corporation for pecuniary profit, organized under the laws of the state, to insure the property of its members by mutual pledges or obligations against loss or damage by fire, etc. The by-laws provided for the issuance of one and five year policies, premiums for the one year policies to be in cash, and for the five year policies a note for five times the annual premium, to be paid in installments of not more than one-fifth of the amount in any one year, at such time or times as the board of directors or executive committee might order. But one full annual premium was required to be paid in cash upon the delivery of all policies. Assessments were to be equitably levied upon the notes to pay losses and expenses, and notice of these assessments was required. Another article of the by-laws provided for the cancellation of policies, and return of such part of the cash premiums as were unearned, based upon the usual short rates. Subscribers to the guaranty fund were to be allowed five per cent. of the amount of their shares as compensation for the responsibility assumed by them, which amount was to be charged to the expense account of the company. The policy in suit was issued by this corporation, insuring the Ness County Sugar Company, of Ness county, Kansas, against loss or damage by fire, upon its plant in said Ness county, loss, if any, to be paid to A. E. Alvord, mortgagee. The policy was for one year, and the sugar company paid the premium (twenty-five dollars) in cash. It was called a "non-participating policy," and provided for cancellation at customary short rates. This condition also appears therein: "In consideration of the issuance of this policy for the amount of premium before stated, the holder of this policy hereby releases any and all claims for dividends, earnings or profits of this company." The only

thing on the face of the policy to indicate that it was issued by a mutual company or upon the mutual plan is the name "Mutual Guaranty Fire Insurance Company." On the twenty-third day of August, 1890, and during the life of the policy, the property insured was totally destroyed by fire. Proper notice and proofs of loss were given the company, but the loss was not paid; and on the second day of January, 1891, the company made a general assignment for the benefit of its creditors. A. P. Barker was made assignee, and he makes the objections which are interposed to appellant's claim.

The record presents two questions for our determination: *First.* Was the policy issued without authority by the officers of the company? *Second.* Is the policy invalid because made in contravention of the statutes of the state? Some other questions are argued which will be considered during the course of the opinion, but these are the controlling ones in the case.

At the time the company was organized, the law authorized two kinds of mutual insurance companies,—one to do business on the plan of mutual insurance, under sections 1122 and 1159, inclusive, of the Code of 1873; and the other, an association of persons making mutual pledges, and giving valid obligations to each other for their own insurance on the assessment plan, under section 1160. The company which issued the policy in suit had no stock, except the shares issued to the subscribers of the guaranty fund. The issuance of these shares and the creation of this fund did not make it a stock company, however. *Corey v. Sherman,* 96 Iowa, 114. The idea of the incorporators, no doubt, was to organize under section 1160 of the Code; and we shall treat the company as organized under that section, our authority for so doing being the *Corey-Sherman Case,* to which we have just referred, and which is in many respects much like the case at bar. Under such articles of incorporation, the persons becoming members

of the company may make mutual pledges, and give valid obligations to each other for their own insurance, but cannot insure property not owned by one of their number, nor can they receive premiums or make dividends. Code 1873, section 1160. Another provision of law is to this effect: "No company organized upon the mutual plan• shall do business or take risks upon the stock plan. · Neither shall a company organized as a stock company do business upon the plan of a mutual insurance company." Referring back to the articles of incorporation which we have heretofore quoted, and we find that the company was to do business upon the mutual plan, and that the funds for the payment of the losses and expenses were to consist of moneys raised by advancements and assessments on mutual pledges given by the members of the company. Now, it may be that the company was authorized to accept an advance payment of money as a pledge against which assessments might be levied from time to time; but it is clear that it was not permitted to accept premiums, as such, nor could it declare dividends. It had no power to write a policy for a stated and definite amount of insurance. Neither could it do business on the stock plan. That it undertook to insure the sugar company for a definite and specific amount, in consideration of a fixed and stated premium, is too plain for successful contradiction. The assured was not a member of the company, except in name, and there was no mutuality between him and the other policy holders.

It has been held, and with good reason, that one who insures his property in a mutual company in a stated amount, for a specific premium, does not become a member of the company, so as to be liable for future assessments. *Insurance Co. v. Smith,* 63 Ill. 187; *Insurance Co. v. Stanton,* 57 Ill. 354; *Given v. Rettew,* 162 Pa. St. 638 (29 Atl. Rep. 703). Certainly, there was no liability on the part of the sugar company or the appellant to pay assessments for losses. The cash premium demanded by the company was paid, and the company agreed to pay a definite and certain amount in

case of loss. There was no mutuality between the members of the company who were insured on the assessment plan and those who paid cash premiums in full. The contract was one which the company had no power to make; and, as the assured must take notice of the laws of the state and the articles of incorporation adopted thereunder, it follows that appellant cannot recover, unless it be on the theory of estoppel.

The doctrine of *ultra vires,* as applied to corporations, is one of the most difficult with which courts have to deal, and the rules are not as definitely settled as we might wish. Were it not for the statutes prohibiting mutual companies organized under section 1160 from taking premiums and from doing business on the stock plan, we would be inclined to hold that, as the corporation had accepted and used the premium paid for the policy in suit, it should be estopped from pleading *ultra vires* as a defense. Indeed, the modern authorities seem to sustain that rule. *Thompson v. Lambert,* 44 Iowa, 239. See *Insurance Co. v. McClelland,* 9 Colo. 11 (9 Pac. Rep. 771); *Matt v. Society,* 70 Iowa, 455; Beach Private Corporations, section 423, and cases cited. But where, as in this case, the act is prohibited by statute, the contract is illegal and void, and cannot be enforced. The rule as stated by Taylor in his work on Corporations (section 299) is as follows: "If a statute expressly forbids a corporation to make a certain contract, the contract is void, even though not expressly declared to be so, and is incapable of ratification; and that the contract is void, as unlawful, may be pleaded by any one to an action founded directly and exclusively on such contract; unless (1) the statutes expressly state what the consequences of violating it shall be, and those consequences are other than that the contract shall be void; or (2) unless the statutory prohibition was evidently imposed for the protection of a certain class of persons, who may alone take advantage of it; or (3) unless to adjudge the contract void and incapable of forming the basis of a right of action

would clearly frustrate the evident purposes of the prohibi-
tion itself." Sustaining his conclusions are the following,
among other cases: *Trust Co. v. Helmer*, 77 N. Y. 64; *Insur-
ance Co. v. Scott*, 19 Johns. 1; *Lester v. Bank*, 33 Md. 558;
*Beecher v. Mill Co.*, 45 Mich. 103 (7 N. W. Rep. 695);
*McPherson v. Foster*, 43 Iowa, 48. Such a contract will not
be enforced, although it may have been executed by one of
the parties. Nor can the doctrine of estoppel be invoked to
bind the corporation to a forbidden act. *Kent v. Mining Co.*,
78 N. Y. 159; *Miller v. Insurance Co.*, 92 Tenn. Sup. 167
(21 S. W. Rep 39). Section 1160 of the Code of 1873 pro-
vides that companies organized thereunder shall not accept
premiums. This the appellant knew, or ought to have known,
as he was charged with knowledge of the law. His position is
not such as appeals very strongly to a court of equity. He
paid his money knowing that the company had no right to
accept it, and ought not to be allowed to base an estoppel
thereon. Again, the company was expressly prohibited from
issuing such a policy as the one in suit.

Appellant further contends that, if the corporation was
not permitted to do the business in which it was engaged, no
corporation existed, and that the incorporators became liable
as a partnership for the business done under the articles. The
difficulty with this contention is that the corporation was not
organized to do an illegal or unlawful business. See *Corey v.
Sherman, supra.* Its articles clearly provide that it
is to do business under section 1160 of the Code, and,
if it did not do so, the promoters thereof are not liable
as partners. They took the necessary steps to incorporate,
and, if the officers or directors thereafter proceeded to do an
illegal business, they may be individually liable for the wrong
done, but the other members of the corporation will not be
held liable as partners. These propositions are elementary,
and require no citation of authorities in their support. See,
as sustaining our conclusions on the whole case, *Rockhold v.
Society*, 129 Ill. Sup. 440 (21 N. E. Rep. 794); *Rockhold*

*v. Association,* 29. Ill. Sup. 440 (19 N. E. Rep. 710); *Pittsburg, C. & St. L. Ry. Co. v. Keokuk & H. Bridge Co.,* 131 U. S. 371 (9 Sup. Ct. Rep. 770); *Miller v. Insurance Co.,* 92 Tenn. Sup. 167 (21 S. W. Rep. 39); *O'Neil v. Insurance Co.,* 71 Wis. 621 (38 N. W. Rep. 345); *Eddy v. Insurance Co.,* 72 Mich. 651 (40 N. W. Rep. 775); *Lucas v. Transfer Co.,* 70 Iowa, 541.

The case differs essentially from *Beach v. Wakefield,* 107 Iowa, *post.* In that case the corporation had power to make contracts like the one upon which it was sued. The prohibition was against an indebtedness exceeding two-thirds of its capital stock. In this case the insurance company had no power to make a contract of insurance on the stock plan, and it was absolutely inhibited from receiving premiums. Again, in that case the corporation had the benefit of the money borrowed, and was asked to repay it. To a plea of *ultra vires* we quoted the following rule, from Morawetz on Corporations: "If an agreement is legally void and nonenforceable by reason of some statutory or common-law prohibition, either party to the agreement who has received anything from the other party, and has failed to perform the agreement on his part, must account to the latter for what he has received. Under these circumstances the court will grant relief, irrespective of the invalid agreement, unless it involves some positive immorality, or there are other reasons of public policy why the courts should refuse to grant relief." See, also, *Heuer v. Carmichael,* 82 Iowa, 290; *Peatman v. Power Co.,* 100 Iowa, 245. If this were an action to recover back the premium paid or for benefits received, the rule just quoted might apply. *Pittsburg, C. & St. L. Ry. Co. v. Keokuk & H. Bridge Co.,* 131 U. S. 371 (9 Sup. Ct. Rep. 770). But such is not the nature of the proceeding. It is to recover upon a contract of indemnity, which the corporation had no power to make, and which is prohibited by statute. The case does not differ in principle from *Lucas v. Transfer Co., supra,* which was an action upon a contract of suretyship.

We there held that the corporation was not liable, and that the officers of the corporation could not ratify such a contract. In the *Beach-Wakefield Case* we held that the corporation was bound to account for the money it had received on the theory of an equitable estoppel, or that he who has accepted the benefits of a transaction must accept its burdens.     The law expressly enjoined the officers of the insurance company from receiving premiums, and it prohibited the making of just such contracts as the one in suit.   Surely, the members of the society who were bound to each other by mutual pledges should not be held to respond to appellee for the amount of his loss.    The order disallowing appellant's claim was clearly right, and it is AFFIRMED.