FIRST NATIONAL BANK OF MARSHALLTOWN, IOWA, v. THE
    CHURCH FEDERATION OF AMERICA and M. G. ALBROOK,
    Appellants.

Mutual benefit associations: ULTRA VIRES: ESTOPPEL. A mutual
1    benefit association has no power to make or ratify an agree-
     ment to pay a commission for procuring members for its
     organization; and an acceptance and retention of certificates
     of membership will not estop it from denying liability therefor.

Contracts of promoters: PERSONAL LIABILITY. The promoter of a
2    mutual benefit association, who contracts to pay a commission
     for procuring members may render himself personally lia-
     ble for the obligation, although he executes the same as the
     alleged general superintendent.

Same. Where the promoter of a mutual benefit association, for
3    the purpose of aiding in obtaining the location of its head-
     quarters in a certain town, agreed to pay a commission for

procuring insurance at that place, a performance of the association agreement to so locate the headquarters did not constitute satisfaction of the obligation to pay commissions.

*Appeal from Marshall District Court.*— HON. G. W. BURNHAM, Judge.

TUESDAY, JANUARY 9, 1906.

IN June, 1902, M. G. Albrook and others conceived the notion of organizing a fraternal beneficiary society to be known as the " Church Federation of America." Albrook was to be superintendent, and was authorized to arrange for a satisfactory location. On November 24th he addressed the following proposition to the secretary of the Commercial Association at Marshalltown:

Head Office Church Federation, Vail, Iowa, Nov. 24, 1902.   Mr. R. E. Sears, Mashalltown, Iowa — Dear Sir:   We see that it will be necessary to have some one push matters for us in Marshalltown.   We believe that Marshalltown is the best point in Iowa for our head office, and, as we are compelled, for lack of facilities, to move very soon, now, if we are to move to Marshalltown, we want to know it soon.   We realize that it means some extra trouble and expense to you to push a matter of this size and do it rapidly.   We place the campaign in your hands to find such help as needed, and will allow you for such expense at the rate of ($1.50) one dollar and fifty cents for each thousand dollars of insurance written for us in Marshalltown and vicinity between now and February 1, 1903.   Such insurance must pass medical examination.   Trusting this will meet the necessary cost of a rapid campaign, Yours fraternally, M. G. Albrook, General Superintendent.

An extension of time indorsed thereon was signed " M. G. Albrook." Sears accepted the proposition, and by the aid of solicitors paid by Albrook procured agreements for insurance with citizens of Marshalltown aggregating $440,-500, and on February 21, 1903, the Commercial Associa-

tion of Marshalltown and the Church Federation, by Al-
brook, as general superintendent, and the general secretary,
entered into a contract by which, in consideration of these
agreements, the Church. Federation agreed to establish its
head offices and headquarters at Marshalltown and continue
them there for twenty years.   The articles of incorporation
of the Church Federation of America were not executed un-
til February 20, 1903, and were recorded on the following
day.   Two days later Sears delivered the agreements to Al-
brook, who receipted therefor, signing his name with " Gen.
Supt." underneath.   Sears demanded payment, but this was
refused, and a written agreement to arbitrate entered into.
Albrook postponed the hearing several times, and finally
declined to proceed, and refused to pay, owing to advice
received from an attorney in Des Moines that the Federa-
tion was forbidden by law to pay for soliciting member-
ship.   Sears had assigned his claim to plaintiff February
16th, and this action was begun, August 20, 1903.   At the
conclusion of the evidence each party moved for a verdict in
his favor.   The motion of plaintiff was sustained, and ver-
dict for $294.75 returned, and judgment entered thereon.
The defendants appeal.   *Reversed* in part; *affirmed* in part.

*Albrook & Lundy,* for appellants.

*Boardman & Lawrence,* for appellee.

LADD, J.— I.   This action is on a claim of R. E. Sears,
assigned to the plaintiff, and is based upon a proposition
to allow him for " expense at the rate of ($1.50) one

1. MUTUAL BENE- dollar and fifty cents for each thousand dol-
FIT ASSOCIA-
TIONS: ultra    lars of insurance written for us in Marshall-
vires: estoppel. town and vicinity," the same to pass medi-
cal examination, signed " M. G. Albrook, General Superin-
tendent."   This was dated November 24, 1903, and,
though Albrook and several others previously had in con-

templation the organization of a fraternal association to be
known as the " Church Federation of America," the articles
of incorporation were not executed or recorded until Febru-
ary 20, 1903.   All of the agreements with citizens of Mar-
shalltown to take insurance in the Federation, were pro-
cured by Sears prior to February 15th.   This, then, was be-
fore the defendant association had come into existence, and
for this reason it was not bound by the contract with Sears.
Agreements with those promoting the organization of a cor-
poration are, because of the situation, necessarily unauthor-
ized by it, and depend for their validity as corporate acts
upon the ratification of the company or association subse-
quently formed.   Purdy's Beach on Private Corporations,
1177.   But the association could not ratify an agreement
which it was prohibited from originally making.   It was or-
ganized under chapter 9 of title 9 of the Code, and section
1833 provides that " such associations shall not employ paid
agents in soliciting and procuring members, except in the
organization or building up of subordinate bodies or grant-
ing members inducements to procure new members."   " Or-
ganization," as here used, refers to "subordinate bodies,"
and not that of the association itself, and the evidence shows
conclusively that whatever Sears did was in the procure-
ment of members for the organization of the association.
Appellee's suggestion that Sears was a member, and there-
fore the compensation proposed was merely an inducement
to a member to procure others, is disposed of by the fact
that there were no members at the time the proposition was
made and the work done.   He undertook to do something
which the statute prohibited the association from employing
him to do, and for this reason the contract to compensate
him was *ultra vires,* and therefore not subject to ratification.

But the plea of estoppel was interposed on the theory
that, as the agreements with the citizens of Marshalltown
to take insurance were delivered to the association and by
it retained and certificates of membership issued to those

named therein, the association ought not, while retaining the benefits, be permitted to repudiate the contract by virtue of which these were obtained. The vice of this reasoning is that it ignores the fact that the employment of Sears by the association was prohibited by statute, with which he is presumed to have been familiar. One cannot enter into an agreement expressly forbidden by statute, and then, by invoking the plea of estoppel, evade the laws of the state and reap the fruits of such agreement as fully as though not prohibited. *In re Assignment Mutual Guaranty Fire Ins. Co.,* 107 Iowa, 143. The policy of this state, as expressed in the statute quoted, is to forbid the employment by such associations of soliciting agents for hire, and it is precisely as effectual against those who undertake to act as agents as against the association. Sears is presumed to have understood this, and therefore in what he did, notwithstanding the agreement, to have put forth his efforts without expectation of compensation from it, which the law forbade. For these reasons a verdict should have been directed in favor of the association.

II.    But the statute does not prohibit others than the association from employing and paying an agent to procure members or insurance. Before there was an association, and when its organization was merely in contemplation, Albrook wrote to Sears:

2. CONTRACTS OF PROMOTORS: personal liability.

We realize that it means some extra trouble and expense to you to push a matter of this size and do it rapidly. We place the campaign in your hands to find such help as needed, and will allow you for such expense at the rate of one dollar and fifty cents for each thousand dollars of insurance written for us in Marshalltown and vicinity between now and February 1 1903. Such insurance must pass medical examination.

This was signed: " M. G. Albrook, General Superintendent." He then sustained no official relation to the asso-

ciation, and in any event the proposition was one it was unauthorized to make. Nor did he communicate what he had done to any of his associates. In these circumstances the words " General Superintendent " are to be regarded as descriptive only, and the proposition construed to be that of Albrook. Indeed, he so indicated by omitting the descriptive words in signing the extension of time. Sears accepted and performed his part of the contract by delivering to Albrook agreements to take insurance aggregating $440,500, and it was conceded on the trial that " there was insurance written upon the lives of persons named in these agreements in the amount of $196,500." Under the contract, then, Sears became entitled to $294.75.

It is urged, however, that full payment has been made to the Commercial Association of Marshalltown by the fulfillment of a contract wherein the Church Federation

3. SAME.

agreed to establish and maintain its headquarters and general offices at Marshalltown, Iowa, and continue there for twenty years, in consideration of the agreements of a large number of its citizens " to take and pay for a large amount of life insurance policies to be issued by said first party, which agreements were secured through the efforts of said second party and have been this day delivered by the second party to said first party." The name of the Commercial Association was signed by its president and by Sears as secretary. It will be observed, however, that this agreement did not purport to cover Albrook's obligation to Sears, nor is it perceived how it can be thought to operate to liquidate the same. Albrook employed him to conduct the campaign for insurance, and it is apparent from the record that this was in aid of the undertaking of the Commercial Association to procure agreements for insurance to the amount of $500,-000 demanded as a condition precedent to the location of its offices in Marshalltown. As Sears did the work proposed,

Albrook is without excuse in declining to compensate him at the rate promised.

The judgment against Albrook is *affirmed*, and that against the association is *reversed*.