[Civ. No. 3179.   Third Appellate District.—December 28, 1926.]

W. I. WAGG, Appellant, v. J. L. TOLER et al., Respondents.

[1] APPEAL — SUFFICIENCY OF EVIDENCE—SUPPORT OF FINDINGS.—On appeal, the question of the sufficiency of the evidence to support the findings of the trial court is not a matter of preponderance of evidence, but the findings will be sustained if supported by any substantial evidence.

[2] CORPORATIONS — DIRECTORS—REPURCHASE OF STOCK—PROMISSORY NOTES—EVIDENCE—FINDINGS.—In this action by the director and stockholder of a corporation to recover on a promissory note assigned to him by the corporation upon an alleged agreement to repurchase stock of the corporation owned by him, the finding that the purchase of plaintiff's stock was not made upon any agreement by the corporation to repurchase same was supported by the evidence.

[3] ID. — UNLAWFUL USE OF ASSETS — FRAUD — EVIDENCE.—In such action, where the trial court found that the purchase of plaintiff's stock was attempted to be made by taking the assets of the corporation and transferring them to plaintiff, which rendered the purchase of plaintiff's stock unlawful and void *ab initio,* plaintiff was not prejudiced by the action of the trial court in admitting the pleadings and proceedings in an action by the maker of the note to show that the corporation fraudulently acquired the note.

[4] ID. — DIRECTORS — PURCHASE OF CAPITAL STOCK—MISDEMEANOR.— Directors of corporations are prohibited by section 309 of the Civil Code from using the assets of the corporation to purchase in behalf of the corporation its capital stock except under well-

1.   See 2 Cal. Jur. 921; 2 R. C. L. 204.
4.   See 7 Cal. Jur. 16.

defined conditions, and under section 560 of the Penal Code such act is made a misdemeanor.

[5] ID. — POWER OF CORPORATION — ULTRA VIRES — DEFINITION. — The term *"ultra vires"* refers to those powers which are not conferred upon a corporation by the act of its creation and are violations of the trust reposed in the managing board.

[6] ID.—PROMISSORY NOTE GIVEN IN PAYMENT OF STOCK—PURCHASE BY STOCKHOLDER — ULTRA VIRES—MISDEMEANOR.—An incorporator and stockholder of a corporation cannot become the purchaser in good faith of a note given the corporation in payment of its stock by exchanging therefor his stock in the corporation, such a transaction being not merely one which is outside of and beyond the powers conferred upon the corporation by the provisions of the codes, to which it owes its corporate existence, but is an unlawful act under section 390 of the Civil Code and is made a crime by section 560 of the Penal Code.

[7] ID.—ASSIGNMENT OF NOTE—INVALID TRANSFER—EVIDENCE.—In an action by a director and stockholder of a corporation to recover on a promissory note assigned to him by the corporation in payment of stock repurchased by the corporation, an objection that the transfer is void may be made at any time.

(1) 4 C. J., p. 878, n. 82, p. 879, n. 84.    (2) 8 C. J., p. 1046, n. 9. (3) 4 C. J., p. 985, n. 83, p. 986, n. 88.    (4) 14a C. J., p. 244, n. 37, p. 279, n. 81.    (5) 14a C. J., p. 307, n. 71.    (6) 8 C. J., p. 520, n. 65; 14 C. J., p. 379, n. 92, 93, p. 382, n. 23.    (7) 13 C. J., p. 410, n. 88, p. 411, n. 1, p. 742, n. 75; 14a C. J., p. 279, n. 81.

APPEAL from a judgment of the Superior Court of Los Angeles County.   J. B. Landis, Judge Presiding.   Affirmed.

The facts are stated in the opinion of the court.

Gerald Willis Myers and Bigby & Myers for Appellant.

Bailie, Turner & Lake for Respondents.

PLUMMER, J.—Action by plaintiff to recover from the defendants the sum of $2,500 on a certain promissory note executed and delivered by the defendant Toler to the defendant Leach-Biltwell Motor Car Company, a corporation, and by the corporation assigned and transferred to the plaintiff. Defendants had judgment and the plaintiff appeals.

5.   See 7 Cal. Jur. 53; 7 R. C. L. 673.
6.   See 7 Cal. Jur. 22.

The grounds urged by appellant for reversal upon this appeal necessary to be considered herein are: First, that the court erred in holding that the transfer of the note sued upon to the plaintiff by the defendant corporation was void *ab initio*; second, that the evidence was insufficient to support the findings; third, errors in the admission of testimony. Other grounds are set forth, but are not such as affect the merits of this action and need not be set forth in detail in this opinion.

It appears from the transcript that some time prior to the incorporation of the defendant Leach-Biltwell Motor Car Company there was in existence a certain other corporation known as and called the Leach-Biltwell Motor Company; that the plaintiff W. I. Wagg became a stockholder in that corporation and also a director; that the par value of the stock purchased by the plaintiff in said corporation was the sum of $10,000; that at the time of the purchase of said stock by plaintiff from the Leach-Biltwell Motor Company the plaintiff was promised employment and was immediately given employment at a salary of $150 per month; that a number of months later all the property and goodwill of the Leach-Biltwell Motor Company was transferred to the Leach-Biltwell Motor Car Company, a corporation, which appears to have been formed for the purpose of taking over all the affairs and properties of the Leach-Biltwell Motor Company.

The testimony tends to show that the plaintiff was one of the incorporators and a director of the Leach-Biltwell Motor Car Company. After this latter company was organized all the property of the Leach-Biltwell Motor Company was transferred to the Leach-Biltwell Motor Car Company and the various stockholders in the older corporation surrendered all their stock and received from the new corporation certificates of stock evidencing their ownership therein. The plaintiff remained in the employ of the Leach-Biltwell Motor Car Company until some time in October, 1921. The agreement for the issuance of stock in the new corporation was made some time prior to March 31 of that year. At that time the plaintiff was a director of the new corporation. Some time in September, 1921, the defendant Toler purchased a number of shares of stock in the defendant Leach-Biltwell Motor Car Company and executed a promissory note in part payment therefor, in the sum of $2,500. In

October, 1921, the defendant corporation purchased from the plaintiff all of its common stock theretofore issued to and then owned and held by the plaintiff, and, as part payment therefor, assigned without recourse and delivered to the plaintiff the promissory note executed to defendant corporation by the defendant Toler, which is the note involved in this action. In December, 1921, the defendant Toler commenced an action against the defendant corporation whereby she sued to have the sale of stock theretofore purchased from the corporation rescinded and set aside on the grounds of fraud; that said action was compromised and in settlement the defendant corporation agreed with the defendant Toler that the transaction relative to the purchase of stock should be rescinded and that the corporation would hold defendant Toler harmless by reason of said note, and agreed before said note matured it would buy the same and return the note to the defendant Toler. This the corporation did not do. The pleadings in this suit instituted by the defendant Toler against the defendant corporation, as well as the cancellation of the purchase of stock, were admitted in testimony by the trial court. Upon the facts presented relative to the transaction, which we have here sketched, the court found as follows: "II. That on or about the 5th day of October, 1921, Leach-Biltwell Motor Car Company attempted to transfer the promissory note herein sued upon to plaintiff, and, for that purpose, wrote upon the back of said note what purported to be an indorsement thereof to plaintiff without recourse, and then and there delivered said note to plaintiff with said purported indorsement thereon, and that plaintiff ever since has been in possession thereof, but the court further finds that said attempted transfer of said note to plaintiff by said Leach Biltwell Motor Car Company was made pursuant to an agreement made and entered into by and between said plaintiff and said Leach Biltwell Motor Car Company, in and by the terms of which agreement said plaintiff attempted to sell to said Leach Biltwell Motor Car Company and the said Leach Biltwell Motor Car Company attempted to purchase from plaintiff certain shares of the capital stock of Leach Biltwell Motor Car Company theretofore sold and delivered by Leach Biltwell Motor Car Company to plaintiff herein, and in and by the terms of which said agreement said Leach Biltwell Motor Car Company, in

consideration thereof, and for no other consideration, attempted to transfer to said plaintiff said promissory note and delivered the same to him as aforesaid; that said promissory note constituted, at the time of the attempted transfer thereof by said Leach Biltwell Motor Car Company to said plaintiff, a part of the actual capital and assets of Leach Biltwell Motor Car Company with which it carried on its corporate business, and did not constitute surplus profits and that said attempt on the part of said Leach Biltwell Motor Car Company to purchase said stock from said plaintiff was not made pursuant to any agreement made or entered into by or between said Leach Biltwell Motor Car Company and said plaintiff prior to or at the time plaintiff purchased said stock from said corporation by which said corporation was bound or obligated to repurchase said stock, or any part thereof, from plaintiff." The court also further found that the transfer of the note by the corporation to the plaintiff was without any consideration to support it; that the transfer was against public policy and that the plaintiff never acquired any ownership in said note. The court also found in finding No. 4, that the defendant Toler had instituted an action for the cancellation of her purchase of stock in the defendant corporation on the grounds of fraud and that the purchase was canceled and rescinded and that the defendant Toler had restored to the defendant corporation everything of value which she had received on account of her agreement to purchase stock in the defendant corporation.

The chief contention of the appellant is that the stock purchased and held by him was purchased and held under an agreement with the corporation to repurchase the same. This contention is found adversely to the plaintiff and constitutes the principal attack made upon the judgment of the trial court.

[1] Though not in the order presented, we will here consider the question of the sufficiency of the evidence to support the findings of the trial court. The plaintiff's assignment in this particular reads as follows: "In finding as a conclusion of fact that the plaintiff did not prove by a preponderance of the evidence that the defendant corporation was under contractual obligations to repurchase his stock." The finding of the court here attacked is not set forth in appellant's brief, nor in any supplement thereto, and it

would be sufficient, under the rule laid down in the *Estate of Berry,* 195 Cal. 354, 358, 359 [233 Pac. 330], under such circumstances to pass this question by, as not being presented so as to require consideration, and so far as this question is concerned in the determination of this cause to hold adversely to the appellant's contention. However, as presented to us on appeal, we will state it is not a matter of preponderance of evidence, because if there is any substantial evidence supporting the finding of the trial court, it is sufficient.

An examination of the testimony shows that the preponderance of the testimony would appear to be against the appellant and not in his favor. The plaintiff testified that at the time he obtained his position in Leach-Biltwell Motor Company and also his stock therein he had a conversation with Mr. Leach, the president of the corporation, in which the following conversation took place. The witness said: "If I don't make good, what is going to happen?" Mr. Leach replied: "Why, we will give you your money back. . . . I couldn't give you the dates, but before I left the employ of the Leach Biltwell Motor Car Company, I had conversations about leaving the company. I was only supposed to be in the store-room about a month and then I was to have a better position; I didn't get a better position, waited a couple of months more and probably three months after I went to work I spoke to Mr. Leach about getting a better position. He said he could not do anything more, nothing at present. I waited a little while longer and went to him again about three months afterwards. I wanted a better position or have him give my money back."

The only other evidence in behalf of the plaintiff is that of the witness King, called by him. This witness testified, in substance, as follows: "About February 18, 1920, I had a conversation with Mr. Leach at the office of the company; Mr. Wagg, Mr. Hertzler, Mr. Leach and myself were present, possibly the stenographer; the first time I remember that I was there, I took Mr. Wagg in and introduced him to Mr. Leach and Mr. Hertzler, and then afterwards we were in again and went over the matter more thoroughly; we went over the matter of the investment of Mr. Wagg in the company and getting a position with the company; he was to have the position of buyer, or purchasing agent; buyer was

the word used—was the only position talked of; there had been a question as to Mr. Wagg's experience and Mr. Leach stated that they were willing to try Mr. Wagg out in that position and if he did not fill that position acceptably to the company, that they would find some other suitable position for him with the company. Q. Was there anything said at that time with regard to whether or not he was not satisfactory, that they would find a purchaser for his stock? A. Yes. Q. What was said in that connection? A. Mr. Leach stated definitely to myself that if Mr. Wagg wouldn't fill the position acceptably and didn't wish to remain with the company, that they would buy the stock back or give him his money back, at any rate see that he got it back."

The witness Leach testified substantially as follows: "I am president and manager of the Leach Biltwell Motor Car Company; I had the same position in Leach Biltwell Motor Company; Mr. Wagg purchased $10,000.00 worth of stock in Leach Biltwell Motor Company; when he purchased the same Mr. Hertzler, the salesman that sold him the stock, and myself were present, as well as Mr. Wagg; Mr. Hertzler is now dead; Mr. Wagg stated he was desirous of obtaining a position where his money went; that he had to work for a living and if he made an investment it would be necessary that he go with it and we gave him a position; I told him his salary would be $150.00 a month; that he could go to work any time; nothing whatever was said about giving him a position as purchasing agent; we did not have any purchasing agent at that time. When we moved down to the Santa Fe Avenue plant and our operations had been enlarged, and Leach Biltwell Motor Car Company had been incorporated, Mr. Wagg made application at that time for the position of purchasing agent; at the time Mr. Wagg purchased the stock in Leach Biltwell Motor Company, there was nothing mentioned at all about Leach Biltwell Motor Company buying the stock, nor was anything said about Leach Biltwell Motor Company repurchasing Mr. Wagg's stock during the time said company was operating the business; I do not remember any conversation in which Mr. Wagg said, 'What will happen if I don't make good?' I did not state to Mr. Wagg in effect that 'if you don't make good, why, we will give you your money back,' nor did I make to him any other statement to that effect; a new company was organized

and called Leach Biltwell Motor Car Company; the stockholders of the old company exchanged their stock for stock in the new company; Mr. Wagg was a director in the Leach Biltwell Motor Car Company; he continued as an employee of the Leach Biltwell Motor Car Company from the time of its organization until some time in October of the same year; he was a director of the company at the time the agreement was made for the exchange of stock; the first time Mr. Wagg mentioned the repurchase of the stock was 60 to 90 days prior to the time he left the company; Wagg came in and said his wife was ill and wanted to return to Canada; that his salary of $150.00 would not permit his sending her there and he living in California, and asked if I could help him out. I said, 'Mr. Wagg, I would be glad to do anything I can for you, you have been a good, faithful employee here; if it is possible for me to turn over to you the assets of the corporation that you can use, and take back your stock, I will endeavor to do so.' This matter came up on several different occasions until the time we actually did deliver to him something like ten or eleven thousand dollars' worth of notes that were in possession of the Leach Biltwell Motor Car Company, among which was the Toler note; these conversations commenced about three months prior to the time that he actually left our employ; the repurchase of his stock had not been mentioned prior to that time; there were several applications among other employees for the position of purchasing agent, of which Mr. Wagg was one; I told him I thought he was not qualified to fill the position; he told me that he thought he was. The Leach Biltwell Motor Car Company never operated at a profit.''

Testimony was then introduced relative to the rescission and cancellation of the purchase of stock by the defendant Toler from the Leach Biltwell Motor Car Company, as we have herein stated. The testimony further shows that the sole consideration for the transfer of the stock from the plaintiff to the defendant corporation was the transfer to the plaintiff of notes held by it, including the notes sued upon in this action.

[2] The foregoing shows without the necessity of argument that the finding of the court that the purchase of plaintiff's stock in the Leach Biltwell Motor Car Company was not made upon any agreement by the company to re-

purchase the same is amply supported and does not fall within the line of cases holding that, under such circumstances, such agreements will be enforced.

[3] The admission of the pleadings and proceedings in the action instituted by the defendant Toler for the cancellation of her purchase of stock in the defendant corporation we think erroneous, but from the fact that finding No. 4 that such stock had been issued upon fraudulent representations and had been surrendered up and canceled and the defendant corporation agreed to hold the defendant Toler harmless on account of the note sued on in this action that had theretofore been transferred to the plaintiff as part payment for the purchase of his stock is wholly unnecessary to support the judgment in this action, and from the further fact that the testimony shows that the finding of the court that the purchase of the plaintiff's stock was attempted to be made by taking the assets of the company and transferring them to the plaintiff, we cannot well see that the plaintiff was at all prejudiced by the action of the court in admitting such testimony. If the purchase of the plaintiff's stock by the use of the assets of the corporation was unlawful and therefore void *ab initio* and transferred no property rights to the plaintiff, then and in that case, it would make no difference whether the defendant Leach Biltwell Motor Car Company had acquired the Toler note by either fair or fraudulent means.

[4] By section 309 of the Code of Civil Procedure directors of corporations are prohibited from using the assets of a corporation to purchase in behalf of the corporation its capital stock, except under well-defined conditions, such as are set forth in the case of *Stewart* v. *Stewart Hotel Co.,* 33 Cal. App. 168 [164 Pac. 620]. Nothing has been called to our attention that would take this case out of the general rule prohibiting directors from the purchase of the capital stock of a corporation and using the assets thereof for such purposes. Section 560 of the Penal Code makes any such act a misdemeanor.

This case presents not merely the question of an *ultra vires* transaction on the part of the corporation, such as was at issue in the cases of *Ingle* v. *Scales,* 36 Cal. App. 412 [172 Pac. 169], *Savings Bank* v. *Barrett,* 126 Cal. 413 [58 Pac. 914], *Savings Bank* v. *Burns,* 104 Cal. 480 [38 Pac. 102], *Bay City* v. *Broad,* 136 Cal. 525 [69 Pac. 225], and *Bloch-*

*man Commercial & Sav. Bk.* v. *F. G. Investment Co.*, 177
Cal. 762 [171 Pac. 943]. In all of these cases it is held,
in substance, that a debtor of a corporation, who had received
loans from or property from a corporation cannot set up in
defense of an action to recover the money loaned or the prop-
erty involved that the act of the corporation in transferring
the property or making the loan was *ultra vires*. As pointed
out in the cases cited, such holding would be, in effect, to
permit a party to a transaction to take advantage of his
own wrong. Thus, banks are prohibited from making loans
to any one individual above a certain percentage of their
capital stock, and if a loan were made above such amount,
it would be *ultra vires* on the part of the corporation, but
it would not operate as a gift to the borrower by estopping
the corporation from maintaining an action to recover the
money loaned. It is evident that such cases have no bearing
upon the questions here presented.

The following cases are more nearly in point: In *Poultry
Producers, etc.*, v. *Barlow*, 189 Cal. 278 [208 Pac. 93], it was
held that a clause in a subscription agreement purporting to
give to a corporation the right, at its option, to purchase its
shares of stock from its stockholders was illegal and void.
Likewise, in *Chilberg* v. *Cross Land Co.*, 55 Cal. App. 678
[204 Pac. 28], it was held that a clause in a certificate of a
corporation agreeing to return to stockholders the amount
paid for shares out of the money received from the sale of
real property of the corporation was void. [5] The term
*"ultra vires"* simply refers to the power of a corporation.
It simply refers to those powers which are not conferred
upon a corporation by the act of its creation and are viola-
tions of the trust reposed in the managing board. This dif-
ference is made plain in the *Matter of the Assignment of the
Mutual Ins. Co.*, 107 Iowa, 143 [70 Am. St. Rep. 158, 77
N. W. 868].

[6] The transaction under consideration is not merely
one which is outside of and beyond the powers conferred
upon the corporation by the provisions of the codes, to which
it owes its corporate existence, but is a distinct unlawful
act so denominated by the Civil Code and made a crime
by the Penal Code. The plaintiff in this case was one of the
incorporators of the defendant as well as a stockholder
therein, and could not, under such circumstances, become a

purchaser in good faith of the Toler note, by exchanging therefor his stock in the defendant corporation. As said in *Schulte* v. *Boulevard Gardens Land Co.*, 164 Cal. 464 [Ann. Cas. 1914B, 1013, 44 L. R. A. (N. S.) 156, 129 Pac. 582], the plaintiff, as well as the corporation, was acting within the inhibitions of the codes. In speaking of section 309 of the Civil Code, prohibiting directors of corporations from dividing, withdrawing, or paying to the stockholders, or any of them, any part of the capital stock, or from reducing or increasing the capital stock, except as therein provided, thus defines the phrase "capital stock": "The phrase 'capital stock,' as used in this section, and in the section of the Practice Act from which the code provision was drawn, has been construed in various decisions of this court. Its meaning has been definitely settled to be, not the shares of which the nominal capital is composed, but the actual capital, i. e., assets with which the corporation carries on its corporate business. (*Martin* v. *Zellerbach*, 38 Cal. 309 [99 Am. Dec. 365]; *San Francisco & N. P. R. R. Co.* v. *Bee*, 48 Cal. 398; *Kohl* v. *Lilienthal*, 81 Cal. 385 [6 L. R. A. 520, 20 Pac. 401, 22 Pac. 689]; *Tapscott* v. *Mexican Colorado River Land Co.*, 153 Cal. 667 [96 Pac. 271]; *Burne* v. *Lee*, 156 Cal. 222 [104 Pac. 438].)"

[7] It is finally urged that the respondents were not entitled to raise this question. This objection, however, is not well taken, as the objection that the contract is absolutely void may be made at any time. In *Morey* v. *Paladini*, 187 Cal. 727 [203 Pac. 760], where the question of a transaction being void is first raised on appeal and its consideration objected to on that ground, the court in holding the transaction illegal and void, states the rule as follows: "The respondent objects to a consideration of the point upon the ground that objection comes too late. But a void contract, a contract against public policy or against the mandate of the statute, may not be the foundation of any action either in law or in equity. (*Santa Clara Valley Mill & Lumber Co.* v. *Hayes*, 76 Cal. 387–390 [9 Am. St. Rep. 211, 18 Pac. 391]; *Chateau* v. *Singla*, 114 Cal. 91–94 [55 Am. St. Rep. 63, 33 L. R. A. 750, 45 Pac. 1015].) As the appellant comes now into court pleading that he has violated the law and is seeking relief based upon his own unlawful acts, respondent contends that the court should leave him where it finds him. '

But neither the silence nor the consent of the parties justifies the court in retaining jurisdiction of such an action. (*Ball* v. *Putnam*, 123 Cal. 134–140 [55 Pac. 773].) Anyone sued upon a contract may set up a defense that it is a violation of an act of Congress, and if it is found to be so, that fact will constitute a good defense to the action. (*Bement* v. *National Harrow Co.*, 186 U. S. 70–88 [46 L. Ed. 1058, 22 Sup. Ct. Rep. 747, see, also, Rose's U. S. Notes].) The burden ordinarily rests upon the party asserting the invalidity of the contract to show how and why it is unlawful (*Harbinson-Walker Co.* v. *Stanton*, 227 Pa. St. 55–63 [75 Atl. 988]), and, as a general rule, cases will not be reversed upon points which the respondent has not had an opportunity to discuss, but in cases of this kind it matters not that no objection is made by either party. When the court discovers a fact which indicates that the contract is illegal and ought not to be enforced, it will, of its own motion, instigate an inquiry in relation thereto."

As we have said, the pleadings and finding in this case are not set out in appellant's brief nor in any supplement thereto, nor is the testimony, other than that of the plaintiff and of plaintiff's witness King, copied herein set forth in appellant's brief, nor does the appellant print anything indicating the grounds upon which objection was made to the introduction in this case of the pleadings and proceedings in the case of Toler against the defendant corporation, and, so far as we have been able to ascertain, the typewritten transcript shows only that the plaintiff objected to the introduction of such testimony as being immaterial. The sufficiency of this objection is questioned by the respondent, but whether sufficient or insufficient, is unnecessary for us to decide, because in holding that the attempted sale of the note and transfer thereof as the assets of the company to the plaintiff, in return for his stock, was void *ab initio* and that the code provisions apply as well to a stockholder as to a corporation is determinative of the case at bar and shows that the plaintiff has no right of property or ownership in the note in question, nothing further needs to be decided.

The judgment of the trial court is affirmed.

Preston, J., *pro tem.*, and Finch, P. J., concurred.