[Civ. No. 7708. Third Dist. Oct. 28, 1949.]

FRANK SARMENTO, Appellant, v. BAY CITY LAND AND CATTLE COMPANY (a Corporation) et al., Respondents.

Mazzera, Snyder & DeMartini for Appellant.

W. Coburn Cook, H. E. Gleason and Otto H. Hoecker for Respondents.

ADAMS, P. J.—Plaintiff, appellant here, brought this action against Bay City Land and Cattle Co., a California corporation, and nine individual directors and managing

agents of the corporation, to compel the directors to account to the corporation for the reasonable rental value of premises owned by the corporation during the period of time they are alleged to have leased such premises for a rental less than its reasonable rental value, which it is alleged constituted a fraud on the corporation, and to restrain and enjoin the directors from leasing land, improvements and equipment of the corporation except for the reasonable rental value thereof, and to have any and all leases theretofore executed by the directors for less than the reasonable rental value declared null and void, on the alleged ground that their execution was beyond the powers granted the directors by the articles of incorporation, and, therefore, ultra vires.

The trial court found against plaintiff and from an adverse judgment he has taken this appeal.

Appellant is the owner and holder of 160 of the 2,400 issued and outstanding shares of the corporation, which shares he acquired in the following manner. One Pete Ramponi originally owned the 160 shares and upon his death his widow succeeded thereto. Appellant married the widow and she transferred the shares to appellant who acquired them on October 22, 1945.

The corporation was formed about December 12, 1927. It owns approximately 960 acres of pasture land in Merced County. The primary purpose of the corporation was to acquire and use the land to pasture its own cattle and to rent pasture when there was enough pasture available. The land had to have water to produce pasture, which water was obtained from Grasslands Water Association. That association is made up of landowners in the area, each landowner being given one share in Grasslands for each acre of land owned. Grasslands obtains water from the Reclamation Bureau and delivers it to its shareholders, when water is available, for a price equal to the cost of the water and its delivery. Before 1948 the Reclamation Bureau charged 50 cents an acre foot for the water, but in 1948 raised the cost to $1.50 an acre foot. Water was not always available. Grasslands had a limit of $2.50 a year assessment on its shareholders. The respondent corporation and all other shareholders in Grasslands paid $2 a share per annum for water, and the cost of water to this respondent on 960 acres was $1,920 a year.

A majority of the shareholders of respondent corporation formed an unincorporated association known as Bay City Gun Club, for the purpose of using the corporation's land for duck

shooting during the open season. The officers and directors of the corporation are also the officers and directors of the Gun Club. To be eligible to membership in the Gun Club the applicant must be the owner and holder of 80 shares of the corporation's stock, must make written application for membership, and must receive an affirmative vote of 65 per cent of the members. Appellant made application for membership in the Gun Club about August 10, 1947, and was rejected. The by-laws of the Gun Club provide that if the first application fails another may be filed within a year. Appellant did not make a second application. The apparent reasons why appellant was rejected as a member of the Gun Club were that he had demonstrated hostility toward the directors previously by commencing two separate actions against them, one in Merced County and another in the city and county of San Francisco, both of which were dismissed. Further evidence of his hostility was furnished by Mr. Parks, the ranch manager for the corporation, who testified that appellant and his wife had called at the Gun Club, and as to what occurred he said:

"Well, as I recall, he came down and was asking me about the prospects of raising barley on the place, or something, I think he was going to level the whole ranch and raise barley, and asked me if I thought it could be done and I told him no, and said, 'Why, are you taking over the place,' and he said, 'I am going to show these sons-of-bitches something around here,' as well as I recall, that is his statement."

Mr. Parks, who is employed on an annual basis, also testified that in 1941 and 1942 barley was planted but the venture was a failure because the land was not farm land; that the hardpan was only eight inches from the surface and when the land was plowed he got alkali.

We have examined the record and find substantial evidence to support the trial court's findings that the directors had not managed or operated the corporation solely for the benefit or gain of the Gun Club nor had they leased to the Gun Club any property of the corporation at a rental less than the reasonable value thereof; that the hunting privileges and use of the hunting preserves, club house and bunk house were granted to the Gun Club for a reasonable rental; that the lease to the Gun Club was not a detriment to the corporation; that there was adequate consideration for the lease; that no greater annual rental could be obtained if the land were used as a commercial gun club; that the lease is not a fraud on the

corporation and that its execution was not beyond the powers of the directors nor was it ultra vires; that though the corporation has been unable to meet its financial obligations and the directors had levied assessments against the shareholders, it was not true that appellant had been required to pay assessments for the use of the Gun Club; that the assessments were not the result of any wrongful, unlawful, illegal or ultra vires action of the directors as alleged in appellant's complaint; that the lease to the Gun Club for $500 per annum, plus a sum equal to one-half the salary and allowances for the keeper of the whole premises, was the full and reasonable market value of the leased premises; that the officers and directors of the corporation at all times acted in good faith and for the best interests of the corporation in its dealings with the Gun Club, and that there had been no fraud, either actual or constructive; that the lease to the Gun Club had not resulted in damage or injury to the corporation or its shareholders, or any of them, and that each and all of the acts of the officers and directors had been confirmed, ratified and approved by the shareholders of the corporation.

There is uncontradicted evidence that it is a custom of the shareholders of corporations owning lands in the San Joaquin Valley to form a gun club for the purpose of duck shooting on the land, such clubs paying a reasonable rental to the corporation for the privilege, the corporation furnishing the water. There is also evidence that the water used for the Gun Club in the instant case was equally beneficial to all the land, and that the Gun Club members were assessed for Gun Club purposes in addition to the assessments levied on them by the corporation. The Gun Club paid the corporation an annual rental of $500 plus a share of the keeper's salary in the approximate sum of $500 a year, or a total of about $1,000 per annum for the shooting privilege that lasted only about 32 days (16 U.S.C.A. Pocket Part, p. 103) out of a year.

Appellant's first contention is: "The leasing of land under circumstances wherein it cost the corporation more than the income received as rent . . . is constructively fraudulent," etc. This contention assumes facts not borne out by the evidence and the findings. The evidence does not support or warrant such contention for the reason that it shows that the cost of water to the corporation was not increased by the operation of the Gun Club and that the water used for the Gun Club was equally beneficial to the land as a whole for pasture purposes.

■ Appellant's second contention follows the trend of the first in that he argues: "The Articles of Incorporation . . . contain nothing allowing or permitting the corporation to lease land at a loss for the sole benefit of another corporation. Therefore, the wrong complained of is also ultra vires." Again appellant ignores the evidence and the finding that the corporation suffered no loss from the lease to the Gun Club. The articles as well as the statutes expressly authorize the corporation to make leases, hence the execution of the lease to the Gun Club, under the evidence, was not ultra vires. (Corp. Code, §§ 802, 803; *Wagg* v. *Toler,* 80 Cal.App. 501, 510 [251 P. 973] ; 6A Cal.Jur. § 730, p. 1270.)

The third contention of appellant is that: "The act being both constructively fraudulent and ultra vires so far as the corporate entity is concerned, the wrong may be redressed, under the circumstances of this case, by a minority shareholder suing in a derivative action to recover on behalf of the corporation." Respondent argues that plaintiff's complaint is insufficient to show that the action was brought on behalf of the corporation or other stockholders similarly situated. The evidence and the findings, and the conclusion we have reached on this appeal, that the acts of the corporation were neither fraudulent nor ultra vires, render this question unimportant and it need not be considered.

The judgment is affirmed.

Thompson, J., and Peek, J., concurred.