[L. A. No. 8204. In Bank.—February 4, 1925.]

In the Matter of the Estate of ROCKIE BERRY, Deceased. C. H. JOHNSON et al., Appellants, v. OLIVE WILLIAMS, Executrix, etc., Respondent.

[1] APPEAL—INSUFFICIENCY OF EVIDENCE—ABSENCE OF SPECIFICATIONS —PROCEDURE—AFFIRMANCE.—Upon an appeal from a judgment, where there is no specification of insufficiency of the evidence to support the findings, and the findings themselves are not to be found in the record on appeal, a proper course is to affirm the judgment without further consideration of the appeal, as the court is not required to search the typewritten transcript for error or deficiencies.

[2] ID.—PETITION FOR REVOCATION OF PROBATE OF WILL—FINDINGS.— Upon an appeal from a judgment denying a petition to revoke the probate of the will of a deceased person, "special findings" may be entirely eliminated from consideration, where the general findings cover thoroughly the entire case, are adequately responsive to all of the issues framed by the pleadings and fully support the judgment.

[3] ESTATES OF DECEASED PERSONS—PETITION FOR REVOCATION OF PROBATE OF WILL — FINDINGS — INTERROGATORIES—DUTY OF COURT.— Upon a petition for the revocation of the probate of a will, the

only duty resting upon the trial judge with reference to findings is to make and file findings of fact which shall be adequately responsive to the issues of ultimate fact which are framed by the pleadings, and in such case it is not error to fail to make special findings responsive to interrogatories proposed by petitioners.

[4] ID.—WILL CONTEST—FRAUD AND UNDUE INFLUENCE—FIDUCIARY RELATIONS—ULTIMATE FACT.—In a will contest on the ground of fraud and undue influence, the existence of fiduciary relations between the testatrix and devisee is no more than a probative or evidentiary fact, relevant to the issue of ultimate fact of whether the will was the product of fraud or undue influence, and a finding either way upon the question of the existence of such fiduciary relations would not of itself be determinative as to either of those questions of ultimate fact.

[5] FINDINGS—FACTS—INFERENCES—APPEAL—PRESUMPTIONS.—The inference of one fact from others, unless such fact is a necessary conclusion from those others, must be made by the trial court, and where probative facts are found by it, if they are such as might authorize different inferences therefrom, it will be assumed upon appeal that the inference made by the trial court was one that will uphold rather than defeat its judgment.

[6] WILLS—EXECUTION IN VIOLATION OF CONTRACT—REMEDIES.—The fact that a will is executed in violation of a contract which called for a different testamentary disposition affords no ground for the denial of the probate thereof, as the remedy for a wrong arising out of the violation of a contract in respect to the making of a will cannot be litigated in a probate court, but must be pursued in a court of law or a court of equity.

[7] ESTATES OF DECEASED PERSONS—PETITION TO REVOKE PROBATE OF WILL—SUFFICIENCY OF EVIDENCE—FINDINGS.—In this proceeding for the revocation of the probate of a will it is held that the evidence is sufficient to sustain the findings of the trial court that the devisee fully kept and performed all of her promises and agreements with the testatrix and that no fraud, deception, or undue influence was practiced upon the testatrix, and that the fact that there was evidence which might have sustained a contrary finding merely presented a conflict of evidence as to which the findings of the trial court are conclusive.

---

4. Undue influence in procuring execution of will, notes, 16 **Am. Dec.** 257; 21 **Am. St.** Rep. 94; 81 **Am. St.** Rep. 670.

6. Mode of enforcing agreement to make a will, note, 66 **Am. Dec.** 761.

Specific performance of agreement to make will, note, **Ann. Cas.** 1914A, 399; **Ann. Cas.** 1918A, 1191.

[8] CONTRACTS—TRUSTEE AND BENEFICIARY—INEQUITABLE ADVANTAGE —REMEDIES.—Although a contract which is entered into between a trustee and his beneficiary through which the former gains an inequitable advantage, either by reason of inadequacy of consideration or otherwise, may be rescinded by the latter, subject to the limitations imposed by the law governing the application of this remedy, such contract is not void, but is voidable at the election of the beneficiary.

[9] ID.—COURTS — JURISDICTION — ESTATES OF DECEASED PERSONS.— Even if an heir or group of heirs of a deceased person may be entitled to accomplish a rescission of a contract entered into by the decedent and a person having fiduciary relations with her, such remedy must be pursued in a court of equity, not in a court of probate.

---

(1) 3 C. J., p. 1409, n. 34. (2) 38 Cyc., p. 1966, n. 89. (3) 38 Cyc., p. 1974, n. 23, p. 1976, n. 34. (4) 38 Cyc., p. 1981, n. 59. (5) 38 Cyc., p. 1987, n. 88. (6) 40 Cyc., p. 1240, n. 8. (7) 40 Cyc., p. 1072, n. 31, p. 1165, n. 87. (8) 39 Cyc., p. 184, n. 67. (9) 15 C. J., p. 1013, n. 92.

APPEAL from a judgment of the Superior Court of Los Angeles County. George H. Thomas, Judge. Affirmed.

The facts are stated in the opinion of the court.

U. W. Breeder for Appellant.

Lloyd O. Miller for Respondent.

MYERS, C. J.—This is an appeal by contestants from a judgment denying their petition to revoke the probate of the last will of the deceased. It is difficult, if not impossible, to ascertain from an examination of appellants' opening brief what specific questions of law are presented for adjudication upon this appeal. The record upon appeal consists of typewritten clerk's transcript and reporter's transcript prepared pursuant to section 953a et seq. of the Code of Civil Procedure. The brief contains no statement of facts, no statement of the issues, none of the allegations of the pleadings, no statement of the facts found (except as to the so-called special findings to be mentioned presently), or of the conclusions of law. Appended to the brief is a printed supplement which contains excerpts from the testimony of a number of witnesses and copies of certain exhibits. In-

cluded therein under the heading "Suggestions of points
and special findings thereon" is set forth what appears to
be a series of questions and answers, fifty in number.  These
are in no way identified nor is their presence in the supple-
ment in any way explained in the brief.  It cannot be ascer-
tained therefrom whether they are taken from some portion
of the record of the trial court or derived from some other
source.  They are from time to time referred to in the brief
by number as "Special Findings."  We are, however, in-
formed by counsel for respondent in his brief that at the
conclusion of the trial below the trial judge announced his
decision against the contestants and ordered judgment in
favor of the defendant; that counsel for the defendant there-
after prepared proposed findings and conclusions of law and
served and filed the same and thereupon counsel for con-
testants served upon the trial judge "Suggestions for points
and request for findings hereon," fifty in number.  These
suggestions and requests without exception related to pro-
bative and evidentiary facts as distinguished from ultimate
facts.  The trial judge prepared his own findings of fact and
conclusions of law, fully and adequately responsive to all of
the issues framed by the pleadings.  Having done this, he
was under no obligation or duty whatsoever to give any
consideration to or take any action upon appellants' "Sug-
gestions for points and request for findings," but neverthe-
less he did, with remarkable patience and industry, prepare
written answers to each of the fifty questions and added
them to the findings of fact which he had prepared, giving
to each a number corresponding to the question propounded
by appellants, to which the same was an answer.  These an-
swers are referred to by counsel as "Special Findings."

[1]  The nature of appellants' contentions upon this ap-
peal can best be arrived at by a process of elimination.
There is no suggestion in their brief of any defect or de-
ficiency in the pleadings, or that the court failed to find
upon any issue framed thereby, or that any finding of fact
is irrelevant to the issues, or that the findings fail to support
the judgment, or that any error was committed at the trial,
or that any conclusion of law is erroneous.  We are thus
brought to the conclusion that the gist of appellants' conten-
tion is that the evidence is insufficient to sustain the findings
of fact, but no such contention is anywhere stated in their

brief (except with respect to the so-called "special find-ings"). There is no specification of such insufficiency of the evidence to support the findings of ultimate facts, and if there were, it could not be reviewed except by reference to the findings themselves, which are nowhere to be found, either in appellants' brief or in the supplement thereto. A proper course to be followed by this court under such cir-cumstances would be to affirm the judgment without further consideration of the appeal. The appellate court is not re-quired to assume the vexatious burden of searching the type-written transcript for error or for deficiencies therein (*Scott* v. *Hollywood Park Co.*, 176 Cal. 680 [169 Pac. 379]; *Mar-cucci* v. *Vowinckel*, 164 Cal. 693 [130 Pac. 430]; *Eddy* v. *Stowe*, 43 Cal. App. 789 [185 Pac. 1024]; *Pasadena Realty Co.* v. *Clune*, 34 Cal. App. 33 [166 Pac. 1025]). When the code was amended in 1907 to provide for a new and alternate method for the preparation of record to be used upon appeal and permitting the use therefor of a typewritten clerk's transcript and reporter's transcript in lieu of the printed judgment-roll and bill of exceptions theretofore required (Code Civ. Proc., sec. 953a et seq.), it was provided therein that "In filing briefs in said appeal the parties must, how-ever, print in their briefs, or in a supplement appended thereto, such portions of the record as they desire to call to the attention of the court" (Code Civ. Proc., sec. 953c). Under this provision of the law it was repeatedly held and reiterated in some scores of cases that the appellate court is not required to look at the typewritten transcript for matters which are not set forth in the printed briefs or supplements thereto, and that if the appellant failed to print in his brief or supplement sufficient of the record to justify a reversal of the judgment, the same should be affirmed on the ground that the record failed to show error (2 Cal. Jur. 644–647, and cases cited). In 1919 (Stats. 1919, p. 261) this section was amended by adding thereto a proviso that "No appeal shall be dismissed nor shall any appeal be decided adversely to any party for failure to print in his brief the portion of the record or any part thereof in support of his points. . . . " The purpose and effect of this amendment was to relieve litigants from the natural and logical consequence of their failure to comply with the statutory mandate to print in their briefs the portions of the record relied upon and to

impose upon the appellate court the burden of investigating and determining what portions of the record ought to be printed as a basis for reviewing the contentions urged by the respective parties (2 Cal. Jur. 647–650, and cases cited). In 1923 (Stats. 1923, p. 748), section 953c was again amended by striking out therefrom the proviso which had been added in 1919, leaving the section substantially as it had been from 1907 to 1919. The purpose and effect of this amendment was undoubtedly to return to the rule of law which had obtained during the period last mentioned and to reinstate the rule of decision which was then applied thereto. The result is not only that it was the plain duty of appellants to print in their brief or in the supplement thereto all portions of the record necessary to be considered by this court before arriving at a conclusion that the judgment should be reversed, but also that because of their failure so to do, this court would be fully justified in affirming the judgment appealed from without further consideration of the record. Appellants seem to believe that they have performed their duty fully in this respect when they have printed the portions of the evidence upon which they rely. They overlook the fact that in order to determine whether or not the evidence is sufficient to sustain a given finding, we must have before us not only the evidence but also the finding. If we had the finding before us and should conclude that the evidence was insufficient to support it, we still could not determine whether or not such finding was essential to support the judgment unless we had before us the pleadings or at least an accurate statement of the issues framed thereby. Appellants state in their reply brief in evident good faith that they have endeavored to fully comply with the requirements of the statute in respect to the printing of the record and believe that they have done so, but that if other portions of the record be deemed necessary for the consideration of the appeal upon its merits they stand ready to print the same. We are disposed, therefore, to proceed with the consideration of this appeal upon its merits, making such examinations of the typewritten transcripts as are necessary to that end. It may be doubted, however, that we would be justified in reversing a judgment upon a ground not disclosed by an inspection of appellants'. printed brief and supplement, and the existence of which can be ascer-

tained only by an examination of the typewritten transcript (*Pearson* v. *Parsons*, 173 Cal. 331, 336, 340 [159 Pac. 1171]).

[2]   An examination of the pleadings discloses that there were four grounds of contest herein, namely, unsoundness of mind, informality of the execution of the will, fraud, and undue influence. Appellants state in their reply brief that they have abandoned the first two grounds for the purposes of this appeal, leaving only questions relating to fraud and undue influence to be considered herein. Appellants' brief is wholly devoted to attacks upon the so-called "special findings." Twenty of these are attacked upon the ground that they are not supported by the evidence. Without unduly prolonging this opinion, it must suffice to say that we find in the record evidence which is legally sufficient to support each of the special findings so attacked. This matter, however, is wholly inconsequential. The twenty special findings so attacked, or, for that matter, all fifty of the special findings, might be eliminated from the record without in any way affecting the validity of the judgment. The general findings which were prepared by the trial judge are most comprehensive. They cover thoroughly the entire field of the case, are adequately responsive to all of the issues framed by the pleadings, and fully support the judgment rendered.

[3]   Others of the special findings are attacked upon the ground that they are not responsive to the interrogatories submitted to the trial judge by counsel for appellants. This is immaterial for the reason that the trial judge owed no duty to respond to any of those interrogatories. Appellants seem to think that if the trial judge failed to make a special finding responsive to any of the interrogatories submitted by them, he committed error therein. That conclusion is rested upon what was said by this court in *Hidden* v. *Jordan,* 28 Cal. 301, 304, *Miller* v. *Steen,* 30 Cal. 403 [89 Am. Dec. 124], and *Porter* v. *Woodward,* 57 Cal. 535, but what was there said was based upon a particular statute enacted in 1861 (Stats. 1861, p. 589), the substance of which was carried into the code in 1872 as section 635 of the Code of Civil Procedure and was repealed in 1876. The only duty resting upon the trial judge in this behalf is to make and file findings of fact which shall be adequately responsive to the issues of ultimate fact which are framed by the pleadings. [4] Appellants are in error in assuming that the question

whether or not there was a fiduciary relation existing between the testatrix and the respondent is a question of ultimate fact upon which the trial court was required to specifically find. It was no more than a probative or evidentiary fact. The existence of such relation would be a circumstance relevant to the issue of ultimate fact whether the will was the product of fraud and to the issue of ultimate fact whether the will was the product of undue influence. A finding either way upon the question of the existence of such fiduciary relation would not of itself be determinative either way as to either of these questions of ultimate fact. [5] The inference of one fact from others, unless such fact is a necessary conclusion from those others, must be made by the trial court and where probative facts are found by it, if they are such as might authorize different inferences therefrom, it will be assumed upon appeal that the inference made by the trial court was one that will uphold rather than defeat its judgment (*Breeze* v. *Brooks*, 97 Cal. 72 [22 L. R. A. 257, 31 Pac. 742]; *Gould* v. *Eaton*, 111 Cal. 639, 644 [52 Am. St. Rep. 201, 44 Pac. 319]; *Nevills* v. *Moore Mining Co.*, 135 Cal. 561, 566 [67 Pac. 1054]).

Appellants assert that the will in question is the product of an agreement between testatrix and respondent under the terms of which respondent was to convey to testatrix certain property in Oklahoma and to live with and care for testatrix while she lived, in consideration of which testatrix was to devise to respondent the property in Los Angeles which was in fact devised to respondent in the will. Appellants assert that this contract was breached by respondent in that she failed to convey to the testatrix some of the property so agreed to be conveyed to her. They conclude from this that the will should be denied probate. No authority is cited to support this conclusion. [6] We pointed out in a recent case that the fact that a will is executed in violation of a contract which called for a different testamentary disposition affords no ground for the denial of the probate thereof. The remedy for a wrong arising out of the violation of a contract in respect of the making of a will cannot be litigated in a probate court, but must be pursued in a court of law or a court of equity (*Estate of Rolls*, 193 Cal. 594 [226 Pac. 608]). [7] There is, however, no basis herein for the assumption that the contract was breached by the respond-

ent. The trial court found that the respondent fully kept and performed all of her promises and agreements with the testatrix. The evidence fully sustains this finding. The fact that there is also evidence which might have sustained a contrary finding merely presents the familiar situation of a conflict of evidence as to which the finding of the trial court is conclusive.

Appellants next contend that the agreement above mentioned was the product of fraud both actual and constructive, practiced upon the testatrix by the respondent. We need not pause to inquire whether if this be so the will itself must be deemed to be the product of such fraud, because the trial court found that no fraud or deception was practiced by or in behalf of the respondent. This finding is amply supported by the evidence, even if we accept appellants' contention that a confidential relationship was shown to exist between the testatrix and the respondent and that the effect thereof was to impose the burden of proof upon the latter.

[8] The court found, in response to special interrogatories, that the value of the property devised to respondent was twelve thousand dollars and that the value of the real property conveyed by respondent to testatrix was two thousand four hundred dollars. Appellants assert that this shows a gross inadequacy of consideration and they argue that, inasmuch as a confidential relationship existed between testatrix and respondent, it follows that the contract was fraudulent as a matter of law. It is undoubtedly true that if a contract is entered into between a trustee and his beneficiary through which the former gains an inequitable advantage, either by reason of inadequacy of consideration or otherwise, the latter is entitled to rescind the contract, subject to the limitations imposed by the law governing the application of this remedy. Such contract, however, is not void, but is voidable at the election of the beneficiary. Appellants seem to assume that they are entitled in this proceeding to invoke the remedy of rescission which the testatrix might have invoked had she lived, and that they are entitled to have this remedy effectuated by means of a revocation of the probate of the will. [9] Whether or not after the death of the testatrix her heir or a group of her heirs may be entitled to accomplish a rescission in her behalf need not now be determined. It is plain that such remedy, if it be available, must

be pursued in a court of equity, not in a court of probate (*Estate of Rolls, supra*). The trial court found that the agreement between the testatrix and respondent was in no sense unfair or inequitable. This finding is supported by two considerations which the appellants have ignored. An important element of the consideration was the promise of respondent to live with and care for the testatrix during the remainder of the latter's life, which promise was fully kept and performed. The testatrix was suffering in an advanced stage of tuberculosis, was physically helpless, requiring constant care and attention day and night. In addition to giving this care and attention, which was not only most arduous but involved the risk of infection, respondent performed the work and labor of supervising, maintaining, and conducting the lodging-house which constituted the sole estate of testatrix. While, as afterward transpired, the testatrix died within less than four weeks after the making of this agreement, none of the parties could then know but that she might continue to live many months or even years thereafter. Furthermore, respondent was the natural object of the bounty of testatrix. She was her nearest of kin and only surviving sister and there is evidence to the effect that her relationship to the testatrix was closer, more intimate and more affectionate than that of any of the other heirs. If the testatrix had devised the greater portion of her estate to respondent without having received any consideration therefor from the latter, such disposition of her estate could not have been regarded as unnatural under the circumstances in evidence. In appraising the consideration it is also to be noted that the agreement was not one for the immediate exchange of property. Under it the respondent conveyed her Oklahoma property to testatrix forthwith, but respondent could not hope to come into the enjoyment of the Los Angeles property belonging to testatrix until after the death of the latter and the administration of her estate.

Appellants' contention that the will is the product of undue influence exercised upon the testatrix by the respondent is in the main based upon the same claimed facts and circumstances which are urged by them in support of their allegations of fraud. To review these in detail herein would prolong this opinion to inordinate length. The trial court found that the respondent never at any time exercised any

undue influence over the testatrix and that the will was made by the testatrix of her own free will and accord, wholly uninfluenced by any person whatsoever. The testimony of the respondent alone was legally sufficient to support this finding, if believed by the trial judge, as it evidently was. This testimony was not inherently incredible, it was not even improbable, and it was in large part corroborated by other evidence. The trial court was fully justified in giving credit to it. It may be conceded for the purposes hereof that the respondent occupied a fiduciary relationship toward the testatrix, that she gained an advantage from the will, that she was active in the matter of the execution of the will, and that the burden of proof therefore rested upon her to show the absence of fraud and undue influence. The fact remains that the evidence amply supports the findings of the trial court, which fully negative the allegations of fraud and undue influence. No other error or insufficiency is suggested by appellants.

The judgment is affirmed.

Lawlor, J., Waste, J., Shenk, J., Richards, J., Seawell, J., and Lennon, J., concurred.