[Civ. No. 23545. Fourth Dist., Div. Two. May 21, 1981.]

SOUTHLAND MECHANICAL CONSTRUCTORS CORPORATION et al., Plaintiffs and Appellants, v. ALAN NIXEN et al., Defendants and Respondents.

418

420

COUNSEL

Gray, Cary, Ames & Frye, Terry D. Ross, Jeffrey M. Shohet, David L. Osias and Dennis Schoville for Plaintiffs and Appellants.

MacDonald, Halsted & Laybourne, Charles H. Dick, Jr., David C. Doyle, Lewis, D'Amato, Brisbois & Bisgaard, Roy M. Brisbois and Jeffrey A. Tidus for Defendants and Respondents.

OPINION

McDANIEL, J.—This litigation for legal malpractice arose after plaintiffs, subcontractors for the construction of a government-sponsored housing project, lost their right to receive from the Army Corps of En-

gineers additional payments for work done on the project. Plaintiffs allege that the defendants, the prime contractor on the project and plaintiffs' attorneys, were responsible for processing plaintiffs' claim against the Army, and, essentially, that defendants did nothing, let alone timely, to process plaintiffs' claim. Because this appeal arises from a judgment entered after an order sustaining a general demurrer, we must, under established principles, assume the truth of all properly pleaded material allegations of the complaint in evaluating the validity of the trial court's action. (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330]; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].)

The following is an account of such material facts as are properly pleaded in the complaint.

In March 1971, the Army Corps of Engineers entered into a written contract with defendant, Quiller Construction Company, Inc., (Quiller) as general contractor for the construction of a housing project. Quiller then entered into a written subcontract with plaintiff, Southland Mechanical Constructors Corporation (SMC) delegating a portion of its work to SMC. SMC, in turn, entered into a written subcontract with plaintiff, Cooley Equipment Company (Cooley), a second-tier subcontractor.

Disagreements arose about the work to be performed by SMC and Cooley on the housing project. Although such work was ultimately performed, the subcontractors contended that they had been misled as to the scope of the work to be performed because of incorrect job descriptions. As a consequence, by means of a written agreement, plaintiffs retained Nixen and Lewis, one of the defendant law firms, to represent the former in their claim for additional compensation against the government. Nixen and Lewis, as the attorneys for SMC and Cooley, prepared and arranged to have executed a written contract with Quiller by the terms of which SMC and Cooley were to look soley to the funds recovered from the government as settlement of their claims for additional compensation in exchange for Quiller's promise: (1) to allow the prosecution of the claim to be filed in Quiller's name on SMC's and Cooley's behalf; and (2) to cooperate with Nixen and Lewis in the prosecution of the claim.

In April 1973, Nixen and Lewis filed a claim with the government nominally on behalf of Quiller. In early 1974 Nixen and Lewis associat-

ed Morgan & Miceli, the other defendant law firm, to prosecute the government claim. However, plaintiffs were not advised of nor was their consent requested to the association of Morgan & Miceli, prior to its occurrence. In January 1974, the Army Corps of Engineers wrote to Quiller asking for more specific information to enable it to process the claim. Quiller forwarded to Nixen and Lewis a copy of this letter from the Army. Apparently, nothing was done in response to this Army Corps of Engineers' letter requesting additional information.

On January 20, 1976, Morgan & Miceli called the Army Corps of Engineers and was told by the Army, because nothing had been done to prosecute the claim, that a recommendation would be made to the contracting officer to issue a final decision based on the then existing record. The Army also told Morgan & Miceli that the decision would be sent to Quiller within a week or two, and that Quiller had thirty days after receipt of the final decision to appeal. The final decision was received by Quiller on January 29, 1976, and it denied the claim in its entirety. Because no appeal was filed, the decision became legally conclusive on February 28, 1976.

On January 31, 1977, SMC and Cooley filed an action against their former attorneys and Quiller in the San Diego County Superior Court. The complaint sought damages for failure to exercise due diligence and care in handling the claim against the government. The theories of liability pleaded were negligence, fraud, and breach of contract. This action was moved to the Los Angeles County Superior Court, and it was there that the court, pursuant to Code of Civil Procedure section 583, subdivision (a), dismissed the action for failure to prosecute. An appeal from this action is now pending before a division of the Second Appellate District.

Following dismissal of their first lawsuit, SMC and Cooley on December 21, 1979, filed this action now before us. The underlying facts and all of the parties are the same in both cases; the only change is that the second action is restricted to a theory based upon breach of a written contract.

The complaint contains three counts. The first count is directed towards the attorney defendants for breach of the written retainer contract. It seeks damages. The second count is directed towards Quiller for breach of contract. It also seeks damages. The third count for declaratory relief is also directed toward the attorney defendants

but is in the alternative to the first count. As to the third count, a declaration is sought that the attorney defendants "breached their duty to exercise the requisite degree of skill, judgment, care and diligence in the representation of plaintiffs and in the handling of plaintiffs' claims which, if plaintiffs are unsuccessful in recovering against QUILLER, has proximately resulted in damages to plaintiffs. ..."

■ ■■■ All of the defendants demurred to the complaint. The trial court sustained the demurrers of Nixen and Lewis and of Morgan & Miceli without leave to amend to both counts directed at them for the following reasons: (1) counts one and three are barred by the statute of limitations set forth in Code of Civil Procedure section 340.6; (2) as to Morgan & Miceli, the complaint fails to state facts sufficient to constitute a cause of action for breach of a written contract; and (3) declaratory relief is inappropriate where only past wrongs are alleged.[1] The trial court sustained Quiller's demurrer on the ground that another action was pending and, thereupon, ordered an abatement of the proceedings against Quiller.

SMC and Cooley appeal only the trial court's rulings as to the attorney defendants. They contend that the trial court's rulings were erroneous because: (1) Code of Civil Procedure section 340.6 applies only to legal malpractice actions sounding in tort and not in contract; (2) even if section 340.6 is found to be applicable to actions based on a written contract, SMC and Cooley have not as yet sustained "actual injury" and thus the statutory period has been tolled as per section 340.6, subdivision (a)(1); and (3) there are facts sufficient to constitute a cause of action for breach of a written contract against Morgan & Miceli.

I

Code of Civil Procedure section 340.6 in pertinent part provides: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional

---

[1]In reviewing the record, we note that there is an order of dismissal as to Morgan & Miceli, but not as to Nixen and Lewis. However, for the purposes of this appeal, we will treat this as an oversight and amend the judgment accordingly. The appellate court may deem an order sustaining a demurrer to incorporate a judgment of dismissal, and thus appealable, where the failure of the trial court to dismiss the cause of action after sustaining a demurrer was an oversight. (*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 921 [167 Cal.Rptr. 831, 616 P.2d 813].)

services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; . . ."

SMC and Cooley (plaintiffs) contend that the Legislature, in enacting section 340.6, did not *expressly* declare its intent, and, consequently, we must look primarily to the language of the statute to determine the legislative intent. Plaintiffs argue at length that the words "wrongful act or omission," as used in the above statute, limit the applicable actions to those in tort and not to actions in contract, and, thus, that the underlying contractual action is governed by Code of Civil Procedure section 337, subdivision 1[2] wherein there is a limit of four years. If plaintiffs' argument is correct, then the statutory period would not have expired on December 21, 1979, the date the complaint of the second action was filed, and it would follow then that the trial court was erroneous in dismissing the action on this ground.

However, the words "wrongful act or omission" when placed in context with the rest of the phrase read, "An action against an attorney for a wrongful act or omission, other than for actual fraud, *arising in the performance of professional services* . . ." (Italics added.) Because of the use of this language, it is clear that section 340.6 applies to legal malpractice actions against attorneys.[3] Because legal malpractice constitutes both a tort and a breach of contract (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra*, 6 Cal.3d 176, 181), there is an ambiguity as to whether the words "wrongful act or omission" serve to limit the one-year statutory period only to tort claims "arising in the performance of professional services." Thus, our determination necessarily must turn on ascertaining the meaning of these words.

---

[2]All code references hereinafter are to Code of Civil Procedure unless otherwise specified.

[3]"Legal malpractice consists of the failure of an attorney 'to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.' [Citation.]" (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 180 [98 Cal.Rptr. 837, 491 P.2d 421].)

 Because of the failure of the Legislature expressly to delineate the meaning of "wrongful act or omission," "we must rely on a cardinal principle of statutory construction: that absent 'a single meaning of the statute apparent on its face, we are required to give it an interpretation based upon the legislative intent with which it was passed.' [Citation.]" (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 256 [104 Cal.Rptr. 761, 502 P.2d 1049].)

In our determination, we follow the general rule that legislative records may be looked at to determine legislative intention, and it will be presumed that the Legislature adopted the proposed legislation with the intent and meaning expressed in committee reports. (*Palmer* v. *Agee* (1978) 87 Cal.App.3d 377, 384 [150 Cal.Rptr. 841]; *Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 712-713 [63 Cal.Rptr. 439].)

From the time the statute was introduced in the Assembly to its ultimate signing by the Governor, every legislative analysis on section 340.6 (Assem. Bill No. 298 (1977-1978 Reg. Sess.)) began with a review of existing statutes of limitation applicable to legal malpractice actions, including section 337, subdivision (1) for actions based on a written contract.[4] Each such analysis concluded with a discussion concerning the manner in which enactment of section 340.6 would change existing law, i.e., it would require commencement of attorney malpractice actions within one year after discovering the facts constituting the malpractice, and it would impose a four-year absolute limit for commencing suit.

Representative of these numerous analyses is the Legislative Counsel's Digest: "Existing law provides for a 2-year statute of limitations for any action based upon a contract, obligation, or liability not founded upon an instrument in writing, and a 4-year statute of limitations for any action based upon an instrument in writing. The law also provides that the statute of limitations does not begin to run, nor does a cause of

---

[4]Before the enactment of section 340.6, the appropriate statute of limitations for an attorney malpractice action did depend upon the plaintiff's theory of liability. A cause of action for breach of an oral contract carried a two-year statute of limitations (§ 339, subd. 1); one for breach of a written contract fell under the four-year limit of section 337, subdivision 1; one for a tort fell within the two-year period of section 339, subdivision 1 because usually malpractice in the legal field causes damage to intangible property interests. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra*, 6 Cal.3d 176, 181-182.)

action based upon an attorney's professional negligence accrue, until the plaintiff or potential plaintiff knows, or should know, all material facts essential to show the elements of a cause of action. [¶] [Assem. Bill No. 298 (§ 340.6)] would provide that an action against an attorney for a wrongful act or omission, other than fraud, shall be commenced within one year after the plaintiff discovers or should have discovered the wrongful act or omission, or four years from the date of the wrongful act or omission."[5]

Nearly identical statements can be found in the following analyses of section 340.6 as it moved through the legislative process, the same as contained in the Bill Digest of the Assembly Committee on the Judiciary, in the Assembly Office of Research's Digest for the third assembly reading, in the Senate Committee on the Judiciary Analysis,[6] in the Senate Democratic Caucus Analysis, in the Enrolled Bill Memorandum to the Governor, and in the Enrolled Bill Report to the Governor's office.[7]

Of some significance, the Bill Digest of the Assembly Committee on the Judiciary indicates that the members of the Assembly Judiciary Committee considered and reviewed the article by Ronald E. Mallen, *Panacea or Pandora's box? A Statute of Limitations for Lawyers* (1977) 52 State Bar Journal 22, wherein Mr. Mallen proposes a legal malpractice statute of limitations. Assembly Bill No. 298 was initially introduced in January 1977 and amended twice in May 1977. The bill as eventually enacted retains much of the wording as Mallen's proposed statute except for a few changes not germane for purposes of this analysis. In addition, Mallen's article suggested three circumstances under which the statute of limitations for legal malpractice would be tolled; all three suggestions, plus a fourth added by the Legislature, were adopted in the final version.

---

[5]The Legislative Counsel's Digest is printed as a preface to every bill considered by the Legislature.

[6]The analysis of the Senate Committee on the Judiciary is even more explicit than that in the Legislative Counsel's Digest. The "purpose" section begins with, "Existing law does not specify a statute of limitations for actions involving legal malpractice. [¶] This bill would provide a limitation period of one year from the date of plaintiff's discovery of the negligent act or four years from the date such negligent act was committed, whichever occurs first." This is followed by a comment on the then present statutes of limitations as enumerated *supra*, footnote 4.

[7]The trial court took judicial notice of these legislative materials, and we likewise do so. (*Serrano* v. *Priest, supra*, 5 Cal.3d 584, 591.)

Mallen's proposal provided in pertinent part: "Legal Malpractice. An action against an attorney for a wrongful act or omission, other than for actual fraud or *breach of a written contract*, arising in the performance of professional services shall be commenced . . ." (Mallen, *Panacea or Pandora's Box? A Statute of Limitations for Lawyers* (1977) *supra*, 52 State Bar J., 22, 24; italics added.) The courts have held that the failure of the attorney to render the requisite degree of skill and knowledge is legal malpractice which "constitutes both a tort and breach of contract." (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra*, 6 Cal.3d 176, 181.) ▮ Because the courts presume that the Legislature, aware of judicial decisions, enacts and amends statutes in the light of such knowledge (*Arnold v. Newhall County Water Dist.* (1970) 11 Cal.App.3d 794, 804 [96 Cal.Rptr. 894]; *In re Farrant* (1960) 181 Cal.App.2d 231, 238 [5 Cal.Rptr. 171]), we must hold that the Legislature, in enacting section 340.6 after consideration of Mallen's proposal, deleted the breach of a written contract exception from the proposal because it intended that section 340.6 apply to both tort and breach of contract malpractice actions.

Moreover, in several of the committee reports it is stated that the purpose of Assembly Bill No. 298 was to reduce the costs of legal malpractice insurance. However, if section 340.6 is interpreted to apply only to tort actions, this purpose would be frustrated, and no change in the law would occur. Legal malpractice can always be viewed as resulting in both tortious injury and breach of implied contract. Thus, if plaintiffs' interpretation were adopted, legal malpractice actions would still be governed by the two-year statutory period (§ 339, subd. 1) if there were an oral retainer, or by the four-year statutory period (§ 337, subd. 1) if there were a written retainer. ▮ Statutes should be construed with reference to the legislative object sought to be accomplished. (*People v. Carroll* (1970) 1 Cal.3d 581, 584 [83 Cal.Rptr. 176, 463 P.2d 400]; *Standard Fruit and Steamship Co. v. Metropolitan Stevedore Co.* (1975) 52 Cal.App.3d 305, 310 [125 Cal.Rptr. 111]; *Blumenfeld v. San Francisco Bay Conservation etc. Com.* (1974) 43 Cal.App.3d 50, 55 [117 Cal.Rptr. 327].)

Plaintiffs argue that "wrongful act or omission" has "been consistently used by attorneys, courts, and legislators to refer to tortious conduct." They further argue that other statutes with statutes of limitation specifically aimed at actions against attorneys expressly state on the face of the statute that both tort and contract actions are covered. They cite us to the statutes of Tennessee and Florida as illustrative.

■ We agree that the Legislature is presumed to have been cognizant or aware of the meaning ascribed to particular words or phrases construed in earlier judicial decisions (*Irvine Co.* v. *California Employment Com.* (1946) 27 Cal.2d 570, 581 [165 P.2d 908]), and to have used such words or phrases in a subsequent statute in the same sense in which the courts have construed them. (*City of Long Beach* v. *Marshall* (1938) 11 Cal.2d 609, 620 [82 P.2d 362].)

■ On the other hand, "Once a particular legislative intent has been ascertained, it must be given effect '"even though it may not be consistent with the strict letter of the statute."' [Citation.] As we stated nearly a half century ago in *In re Haines* (1925) 195 Cal. 605, 613 ...: '"The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act."'" (*Friends of Mammoth* v. *Board of Supervisors, supra*, 8 Cal.3d 247, 259; *Rushing* v. *Powell* (1976) 61 Cal.App.3d 597, 604 [130 Cal.Rptr. 110].) Moreover, words of a statute must be given such interpretation as will promote rather than defeat the general purpose and policy of the law. (*Id.* at p. 604.)

Our further task then is to determine whether the words "wrongful act or omission" are "sufficiently flexible" so as to effectuate the legislative intent that breach of contract actions should be brought within the ambit of section 340.6.

Black's Law Dictionary does not define wrongful act in strictly tortious terms: "WRONGFUL ACT. Any act which in the ordinary course will infringe upon the rights of another to his damage, unless it is done in the exercise of an equal or superior right." (Black's Law Dict. (4th ed. 1951) p. 1788, col. 2.)

Cases abound in which breaches of contract have been termed wrong or wrongful. (*De La Hoya* v. *Slim's Gun Shop* (1978) 80 Cal.App.3d Supp. 6, 9 [146 Cal.Rptr. 68]; *O'Neil* v. *Spillane* (1975) 45 Cal.App.3d 147, 158 [119 Cal.Rptr. 245].) "...we observe that the same wrongful act may constitute both a breach of contract with the resultant contractual remedy of rescission and an invasion of an interest protected by the law of torts calling for tort remedies. [Citations.]" (*Benard* v. *Walkup* (1969) 272 Cal.App.2d 595, 606 [77 Cal.Rptr. 544]; *Boyd* v. *Bevilacqua* (1966) 247 Cal.App.2d 272, 288 [55 Cal.Rptr. 610].) "...such

rule does not apply where the wrongful act or acts complained of are not only a breach of contract but constituted a tort ...". (*Rolapp* v. *Federal Bldg. etc. Assn.* (1936) 11 Cal.App.2d 337, 343 [53 P.2d 974]; *Estate of Berry* (1925) 195 Cal. 354, 361 [233 P. 330].) It is apparent that the phrase "wrongful act or omission" has no single, settled legal meaning. It is sometimes used interchangeably as a reference to both tortious and contractual wrongdoing.

■ Where a word of common usage has more than one meaning, the one which will best attain the purposes of the statute should be adopted, even though the ordinary meaning of the word is enlarged or restricted. (*Friends of Mammoth* v. *Board of Supervisors, supra*, 8 Cal.3d 247, 260; *People* ex rel. *S. F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533, 543-544 [72 Cal.Rptr. 790, 446 P.2d 790].) Thus, we conclude that the Legislature intended to include contract actions within section 340.6 and that the wording of the statute can be reasonably interpreted to reflect such intent.

## II

■ Plaintiffs argue, even if we determine that section 340.6 applies to breach of contract actions, that plaintiffs have not yet sustained actual injury, and thus, the statutory period has been tolled under section 340.6, subdivision (a)(1). The thrust of plaintiffs' argument is that plaintiffs will incur actual injury, i.e., will be deprived of their compensation for their job-related expenditures only if they do not prevail against Quiller or are unsuccessful in collecting a judgment from Quiller. They argue in other words, if plaintiffs prevail and collect judgment against Quiller, the attorney defendants' breaches of duty will not have caused plaintiffs to sustain actual injury. Thus, according to plaintiffs, the statutory period does not begin to run until determination of the action against Quiller.

On the other hand, the attorney defendants argue that the running of the statutory period began February 28, 1976, the date on which plaintiffs lost their right to appeal against the Army Corps of Engineers. The attorney defendants concede that the latest date from which the statutory period would begin to run was April 16, 1976, the date that plaintiffs, in the complaint filed in the first action, admitted discovery of the lost appeal.[8]

---

[8]The trial court took judicial notice of the complaint filed in the first action and we likewise do the same.

■ *Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433], the leading case on this issue, states, "If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.] Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice. [Fn. omitted.] ■ Prosser states the proposition succinctly, 'It follows that the statute of limitations does not begin to run against a negligence action until some damage has occured.' (Prosser, Law of Torts (4th ed. 1971) § 30 at p. 144.) [¶] ■ The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. [Citations.] Any *appreciable and actual harm flowing* from the attorney's negligent conduct establishes a cause of action upon which the client may sue. [Italics added.] [¶] ■ Indeed, once having discovered his attorney's negligence and having suffered some damage, the client must institute his action within the time prescribed in the statute of limitations or he will be barred from thereafter complaining of his attorney's conduct. [Citations.]" (*Id.* at pp. 200-201.)

It is clear that the statute of limitations begins to run: (1) when the client discovers, or should discover, the facts establishing the elements of his cause of action for legal malpractice (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra*, 6 Cal.3d 176, 194), and (2) when the client sustains appreciable and actual harm. (*Budd* v. *Nixen, supra*, 6 Cal.3d 195, 201.)[9]

■ A client suffers damage when he is compelled, as a result of the attorney's error, to "'incur and pay attorney's fees and legal costs and expenditures.'" (*Budd* v. *Nixen, supra*, 6 Cal.3d 195, 201.) The statute of limitations commences to run when a cause of action accrues, i.e., when the error becomes irremediable and the impact of the injury occurs. (*Heyer* v. *Flaig* (1969) 70 Cal.2d 223, 225 [74 Cal.Rptr. 225, 449

---

[9]Both *Neel* and *Budd* were filed before the enactment of section 340.6. *Neel* held that the discovery rule pertained to legal malpractice actions based upon both tort and breach of contract. However, *Budd* specifically restricted the damage rule to actions in tort. Based upon our decision that section 340.6 also applies to breach of contract actions the "actual injury" rule of *Budd* is hereby extended to pertain to legal malpractice actions for breach of contract.

P.2d 161]; see *Chamberlin* v. *Smith* (1977) 72 Cal.App.3d 835, 843 [140 Cal.Rptr. 493].)

■ In the case here before us, there was a written agreement between Nixen and Lewis and plaintiffs that "Attorney agrees to provide legal services for [plaintiffs'] claim for relief against the Army Corps of Engineers ... through the General Contractor, Quiller Construction Company ..." It is our view that the damage to plaintiffs, because of the attorney defendants' alleged error, became irremediable on February 28, 1976, the last date on which an administrative appeal could be filed. At this point, plaintiffs lost their right to compensation *from the government*, the exact purpose for which attorney defendants were hired.

■ Furthermore, the latest date from which the statutory period would begin to run was January 31, 1977, when the first action against the attorney defendants was filed, because it was then beyond dispute that attorney fees and legal costs and expenditures had been thereby incurred by plaintiffs. In any event, if we compute the time period from the later date, the action before us was filed nearly three years after this date, well beyond the one-year statutory period. Where there are no triable issues of fact as to when a client would have suffered such damage that he would have a cause of action for his attorney's negligence, then a court may determine this as a matter of law.[10] (*Budd* v. *Nixen, supra*, 6 Cal.3d 195, 202.)

Plaintiffs cite *Alhino* v. *Starr* (1980) 112 Cal.App.3d 158 [169 Cal.Rptr. 136], and *Commercial Standard Title Co.* v. *Superior Court*, (1979) 92 Cal.App.3d 934 [155 Cal.Rptr. 393] to support their argument that actual injury has not yet occurred to them. These two cases are not on point.

In both cases the plaintiff-client sued defendant I. The legal malpractice action stemmed from the fact that plaintiff's attorneys were

---

[10]In the first count of the complaint for damages against defendant attorneys, plaintiffs state that they "have been damaged in the amount of $347,648.94 which sum was, at all times material herein, certain or capable of being made certain by calculation." However, as an alternative to the first count, plaintiffs state in the third count for declaratory relief that they "will be damaged in the amount of $347,648.94 in the event that plaintiffs are unsuccessful in obtaining or collecting upon a judgment against Quiller."

According to plaintiffs, the allegations as pleaded in the complaint do not admit as true that plaintiffs were already damaged by defendant attorneys.

negligent in not preventing the harm to plaintiff caused by defendant I. In *Alhino*, plaintiff sued both defendant I and defendant II-attorney. In *Commercial Standard Title Co.*, defendant I cross-complained against plaintiff's attorneys for contribution.

In these cases, the courts ruled that the attorneys were not liable for any damages where defendant I pays the full amount of damages to plaintiff; the attorneys are only liable where there is evidence of aggravated damages caused by the attorneys.

The rationale was stated in *Commercial Standard Title Co. v. Superior Court, supra*, 92 Cal.App.3d 934: "Ordinarily independent tortfeasors who do not act in concert are not jointly liable even though their acts have united to produce one injury. [Citations.] Each is responsible only for the part of the damage resulting from his own acts. [Citations.] [¶] ... the negligent lawyer's liability proceeds from a totally different source, factually and legally, from that of his client's opponent. The lawyer certainly does not act in 'concert' with the opposition to produce the injuries to his client. His wrong arises from the failure to exercise the reasonable lawyer skill in performance of his task. [Citation.] The Title Companies are charged with negligent misrepresentation in connection with a lot book guaranty. These are independent wrongs. They do not arise from violation of a common duty ..." (*Id.* at p. 943.)

However, in the case before us, the cause of action against Quiller (defendant I) arose from a breach of a written contract wherein Quiller agreed to *cooperate* with plaintiffs' attorneys in prosecuting the latters' claim against the government. Both the liability of the attorney defendants and of Quiller proceed from the same source, both factually and legally. ▮ Moreover, if two or more persons are under a common duty and failure to perform that duty amounts to tortious conduct, each is subject to liability for the entire harm resulting from failure to perform the duty. (Rest.2d Torts, § 878, p. 323.)

▮ Based upon the foregoing, the period of limitations was not tolled, and we conclude that section 340.6 bars plaintiffs' action against the attorney defendants because the latest date on which plaintiffs discovered the error caused by the attorney defendants and by which they were damaged was January 31, 1977.

Otherwise, perhaps it would be a sufficient response to the plaintiffs' tolling argument that they themselves pleaded in paragraphs 28, 34 and

39 of their complaint that they had been damaged to the extent of $347,648.94 at least as of the date the complaint was filed, i.e., December 21, 1979.

### III

■ Contrary to plaintiffs' suggestion, section 340.6 will not eliminate the right of plaintiffs in attorney malpractice actions to elect between a suit in tort or a suit for breach of contract. The dual theories remain, as does the plaintiff's right to elect. In a given case, differing elements and measures of damage still will lead plaintiffs to elect one theory and forego the other. The only effect of our interpretation of section 340.6 is to eliminate the statute of limitations as one factor among many in making that election.

Because of the basis for our decision, we need not address the parties' other contentions, including the abatement question.

### DISPOSITION

The judgment is affirmed.

Kaufman, Acting P. J., and Morris, J., concurred.

A petition for a rehearing was denied June 10, 1981, and appellants' petition for a hearing by the Supreme Court was denied August 19, 1981.