[No. AO11909. First Dist., Div. Four. Mar. 28, 1984.]

CYRIL McCANN, Plaintiff and Appellant, v.
JACQUES R. WELDEN, Defendant and Respondent.

COUNSEL

Joseph M. Neri for Plaintiff and Appellant.

Long & Levit, Ronald E. Mallen, Allan R. Moltzen, Susan M. Carbone, Peter R. Kindem and Marsha L. Morrow for Defendant and Respondent.

OPINION

POCHÉ, J.—Plaintiff Cyril McCann brought this malpractice action against his former attorney, Jacques Welden. Welden successfully moved for a summary judgment on the ground that the statute of limitations barred suit. McCann appeals from the judgment, contending triable issues existed as to when he discovered the allegedly negligent acts and was injured thereby.

### Facts

In October 1976 McCann (appellant) retained Welden (respondent) to represent him in securing a dissolution of his marriage. On May 9, 1977, an interlocutory judgment of dissolution was filed along with a stipulation drafted by respondent which provided for distribution of the community assets and for appellant's payment of spousal support. Appellant discharged respondent in June 1977[1] and, dissatisfied with the terms of the stipulation, consulted other attorneys on the matter. One of these attorneys was a Mr. Barkan, who in consultations concluding in November or December 1977

---

[1]On September 14, 1977, appellant filed a substitution of attorneys naming himself as attorney of record.

advised appellant that respondent had rendered inadequate services with regard to the distribution of certain assets and that appellant might have a valid malpractice claim against him. After considering the relatively small amount he could expect to recover for the errors Barkan had described, appellant decided not to sue.

In May 1978 appellant purchased a house and shortly thereafter retained Attorney Joseph Neri[2] for the purpose of terminating his support obligations. In June 1978 Neri advised appellant that, contrary to appellant's understanding of the language of the stipulation, his purchase of a house did not terminate his support obligation.[3] In preparation for the hearing on the motion to terminate support Neri deposed Mrs. McCann and learned that, contrary to respondent's assurance to appellant, the savings account money identified in the stipulation as Mrs. McCann's separate property was not derived from her inheritance but from community earnings. On November 15, 1978, the court denied appellant's motion to terminate spousal support.

On February 23, 1979, appellant filed a complaint against respondent and on June 26, 1979, amended it to allege that respondent was negligent in failing to secure an equal division of various community assets and in failing to ensure that appellant's support obligation would terminate within one year.[4]

On March 19, 1980, respondent moved for a summary judgment on the ground that the action was barred by the one-year statute of limitations, section 340.6 of the Code of Civil Procedure.[5] In support of the motion respondent filed appellant's deposition in which appellant stated that he was dissatisfied with the terms of the stipulation and hence with respondent's services at the time the stipulation was filed, May 1977. Respondent argued that appellant thus discovered the alleged negligence as early as May 1977 and at the latest in September 1977 when he substituted himself as attorney of record.

In opposition to the motion appellant filed a declaration wherein he averred that he signed the stipulation only because respondent had assured him

---

[2]Barkan referred respondent to Neri.

[3]The stipulation provided: "Petitioner's net income last year was $12,000.00 and this year is averaging $1,000.00 per month, and Petitioner will have, *until buying a home,* an additional income from interest of approximately $350.00 per month. Based upon these figures, Petitioner will pay spousal support to Respondent in the sum of $400.00 per month." (Italics added.)

[4]The complaint also stated a cause of action against Mrs. McCann for conversion.

[5]Unless otherwise indicated, àll further statutory references are to the Code of Civil Procedure.

the language of the support provision meant that support would terminate automatically upon his purchase of a house. He did not learn otherwise until he consulted Neri in June 1978. In the declaration appellant also stated that respondent told him that he had inquired into the character of the savings account money and had determined it was Mrs. McCann's separate property. Appellant stated that he first suspected the opposite might be true on August 17, 1978, when Neri deposed Mrs. McCann.

The trial court granted the motion and entered judgment for respondent.

### Discussion

A motion for summary judgment should be granted only if the affidavits, declarations, admissions, answers to interrogatories and depositions submitted on the motion "show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subds. (b) and (c).) ■ In reviewing the propriety of a summary judgment the facts alleged in the aforementioned papers of the nonmoving party, appellant here, are accepted as true. (*Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264].)

Section 340.6 provides in pertinent part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; . . ." The statute took effect January 1, 1978. (Cal. Const., art. IV, § 8, subd. (c)(1).)

■ The gist of appellant's argument is that section 340.6 means what it says: the actual or constructive discovery of an act or omission the client alleges was wrongful commences the limitations period for an action based on *that particular* act or omission. The wrongful acts or omissions at issue here are: (1) respondent's representation that the language he employed in the stipulation guaranteed termination of the support obligation immediately upon appellant's purchase of a house; and, (2) respondent's representation that he had inquired into the character of the savings account funds and had determined them to be Mrs. McCann's separate property. Appellant argues that he: (a) discovered the wrongful representation concerning the legal effect of the support provision and suffered injury therefrom in November

1978 when his motion to terminate was denied; and (b) discovered the wrongful representation concerning the savings in August 1978 after Neri took Mrs. McCann's deposition. Discovery and the resultant injury therefore occurred well within the one-year period.

Respondent's interpretation of the statute is less literal. He argues that the actual or constructive discovery of *any* act or omission the client believes was negligent triggers the limitations period for an action based upon that or any other related act or omission even if undiscovered. Thus, the limitations period for any action by appellant based upon acts or omissions related to respondent's drafting of the stipulation commenced as early as May 1977 when the stipulation was filed and appellant expressed dissatisfaction with its terms and commenced no later than December 1977 when attorney Barkan informed appellant that he had a possible malpractice action against respondent.[6] Respondent's conclusion is that since the two wrongful *acts or omissions at issue relate to respondent's drafting of the stipulation* and hence were "discovered" in 1977, this action, filed February 23, 1979, is barred by the one-year limitation of section 340.6.

■ A court's primary objective in statutory construction is to effectuate the Legislature's intent. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) In seeking legislative intent the court turns first to the language employed and its usual, ordinary meaning. (*Ibid.*) If the words are clear the inquiry ends there. (*Ibid.*)

■ Here the Legislature directed that discovery of "facts constituting the wrongful act or omission" starts the statutory period for bringing suit with respect to that "wrongful act or omission." (§ 340.6.) ■ An "act" is defined as "[a] thing done; a deed . . . ." (1 Oxford English Dict. (1933) p. 91.) It refers to a single, discrete instance of conduct rather than to a continuous transaction or course of conduct. ■ An "omission" is simply the absence of an act, "[t]he action of omitting or leaving out, . . . an instance of this." (7 Oxford English Dict., *op. cit. supra,* at p. 109.)

■ The Legislature spoke plainly in section 340.6. Had it intended the discovery of a single wrongful act to commence the limitations period for suit on a related but separate act it would have said so. ■ When attorney Barkan informed appellant in December 1977 that he had a possible malpractice action for respondent's acts or omissions in drafting the stipu-

---

[6]In support of his motion for summary judgment respondent argued below that appellant discovered the negligent acts and suffered injury therefrom no later than September 1977. On appeal he contends that discovery and injury occurred at least by December 1977.

lation regarding the distribution of certain assets[7] the period commenced for an action based on those acts or omissions. Not yet discovered were the wrongful acts or omissions at issue here.

A contrary argument may be advanced that since section 340.6 was enacted to reduce the costs of legal malpractice insurance (*Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 429 [173 Cal.Rptr. 917]) it should be liberally construed to bar actions. ■ Legislative intent, however, is presumed to be reflected in the words used. (*Id.,* at p. 430.) ■ Here the words have but one meaning: discovery of the fact of a wrongful act or omission starts the running of the statutory clock as to that wrongful act or omission.

Respondent cites *Melgard* v. *Hanna* (1980) 45 Ore.App. 133 [607 P.2d 795] for the proposition that "the type of knowledge required to invoke the discovery statute as a matter of law is merely the belief that the attorney has somehow caused the client some injury. The client need not know all of the facts of the wrongful conduct or the full extent of the wrong." There a former client brought an action against an attorney, alleging specific acts of negligence with regard to the purchase and management of investment properties. (*Melgard* v. *Hanna, supra,* 607 P.2d at p. 796.) The court affirmed a summary judgment for the attorney, holding that the limitations period began to run when the client realized his attorney's "bad advice" caused his losses. (*Id.,* at p. 797.)

*Melgard* is distinguishable. First, the statute there was broadly worded and, unlike section 340.6, did not specify what event triggers the limitations period.[8] Section 340.6 is considerably more precise. It directs that discovery of "acts or omissions" commences the period as to those specific instances of conduct. Second, the statute in *Melgard,* as interpreted, sets up an objective standard for discovery: the limitations period commenced not upon actual discovery of negligence but at the time of constructive discovery, i.e., when the exercise of reasonable care would have revealed the negligence. (*Id.,* at p. 796.) The essence of the court's holding was that the limitations period for actions based on specific wrongful acts begins on the date of *constructive* discovery of those acts. It did not, as respondent con-

---

[7] In his declaration appellant stated that Barkan advised him that he had a possible action against respondent for misdescribing a parcel of land, overvaluing his tools, and for not properly securing the return of certain items from Mrs. McCann. Appellant stated that he decided the recovery for these alleged errors did not justify suit. Appellant averred that Barkan gave him no advice with regard to the support provision or savings account funds.

[8] Oregon Revised Statutes section 12.110, subdivision (1) provides that "[a]n action for . . . any injury to the person or rights of another . . . shall be commenced within two years. . . ."

tends, hold that the limitations period for an action based on specific acts commences upon *actual* discovery of any related act or upon the client's adoption of a general belief that his attorney has somehow been negligent.

Next, respondent relies on *McGee* v. *Weinberg* (1979) 97 Cal.App.3d 798, 803 [159 Cal.Rptr. 86], for the proposition that "[t]he statute of limitations is not tolled by belated discovery of *legal theories,* as distinguished from belated discovery of *facts.*" There a client brought a negligence action against her divorce attorney for failing to include in the property settlement stipulation a provision ordering her former husband to maintain her as an irrevocable beneficiary of his life insurance. She contended the then applicable two-year limitations period[9] did not begin until she was advised by a second attorney that she had a possible malpractice action. (*Id.,* at p. 802.) Affirming the judgment of dismissal which followed the defendant's successful demurrer the Court of Appeal held that the limitations period commenced when the client received no insurance benefits at her former husband's death. (*Ibid.*) That she had not yet discovered her right to sue the attorney for negligence—discovery of legal theory—was immaterial. (*Id.,* at p. 804.)

The case at bar is distinguishable from *McGee.* Appellant here discovered neither the facts nor the theory of either of his legal malpractice causes of action until respondent's advice proved to be wrong: in August 1978 as to the character of the savings and in November 1978 with respect to the effect of the support obligation. *McGee* does not support respondent's argument.

Respondent also argues that even if appellant lacked actual knowledge he had constructive knowledge of the errors by December 1977 because his general dissatisfaction with respondent's performance, when coupled with Barkan's conclusion that respondent had been negligent as to certain other assets, put him on inquiry notice as to all draftsmanship errors. ■ Whether appellant "through the use of reasonable diligence should have discovered . . . the facts constituting the wrongful act or omission" (§ 340.6) by December 1977 depends on whether he possessed knowledge sufficient to put a reasonable person on inquiry, or whether he had an opportunity to learn of the facts of the alleged errors from sources available to him. (*Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 101 [132 Cal.Rptr. 657, 553 P.2d 1129].)

That a discontented client sought expert advice as to whether he should sue his former attorney for malpractice does not necessarily mean that the

---

[9]The statute in effect was section 339, subdivision 1, which provides: "Within two years: 1. An *action upon a contract, obligation or liability not founded upon an instrument of writing* . . . ."

client at that time had an ability to learn the facts underlying his cause of action. In *Baright* v. *Willis* (1984) 151 Cal.App.3d 303 [198 Cal.Rptr. 510], the defendant's attorney filed a workers' compensation claim for injuries the plaintiff suffered in an accident, but advised him that a personal injury action against third-party tortfeasors could not be brought. (*Id.*, at pp. 307, 310.) A second attorney gave the plaintiff the same advice but a third attorney informed him that a personal injury action against the third-party tortfeasors could have been filed but was now barred. (*Id.*, at p. 307.) On appeal the court rejected the reasoning that the plaintiff became or should have become aware of the defendant's error upon consulting the second attorney. (*Id.*, at p. 313.) The court stated: "[P]laintiff's mere inquiry whether such lawsuits could be brought does not necessarily imply knowledge. To the contrary, the repeated questioning of his attorneys implies a lack of legal sophistication on plaintiff's part." (*Ibid.*) Likewise, appellant's efforts here to determine his legal rights against respondent do not necessarily imply constructive discovery of the facts giving rise to his causes of action.

Nor did appellant have a duty to personally verify the accuracy of respondent's advice absent knowledge sufficient to arouse the suspicions of a reasonable person. In *Krusesky* v. *Baugh* (1982) 138 Cal.App.3d 562 [188 Cal.Rptr. 57], a client brought an action against her attorney for negligently advising her that she had no community property rights in her former husband's military retirement pension. (*Id.*, at p. 565.) The court held that she could not be deemed to have constructively discovered the facts constituting the negligent act until a second attorney advised her the pension was a community asset. The court reasoned that because a client has a right to rely on her attorney's advice, he or she is not required "to consult a second lawyer in every case for another opinion on every subject." (*Id.*, at p. 568.)[10] Here, by consulting other attorneys, appellant took that extra step of inquiring into the adequacy of respondent's services. Appellant was under no duty to also personally investigate the source of the savings account funds since his attorney, respondent, had represented that they were Mrs. McCann's separate property.[11] Similarly, he was not required to search the

---

[10]*Krusesky* v. *Baugh* appears to conflict with *McGee* v. *Weinberg, supra,* 97 Cal.App.3d 798, but is distinguishable. The attorneys in both actions failed to provide for their client's rights in the ex-husband's benefits. In *Krusesky,* however, the client alleged a negligent misrepresentation: that the attorney affirmatively stated that she had no rights to her husband's pension benefits. The client in *McGee* alleged a negligent omission: that the attorney should have but failed to secure her right to be maintained as her ex-husband's beneficiary. The client in *Krusesky* had a right to rely on her attorney's specific advice; the client in *McGee* never received advice concerning her right to the benefits and thus had a greater duty to inquire.

[11]In his declaration appellant stated that he had no independent information concerning the savings account because Mrs. McCann handled all the family banking.

case law to verify respondent's representation concerning the legal effect of the support provision.

▮▮▮ Appellant presented counter-affidavits which made triable issues of fact the determination of: (a) whether or not appellant was reasonably diligent in investigating the facts; and (b) whether or not discovery occurred in 1977. In light of the counter-affidavits, determination of the issues by way of summary judgment was error.

Accepting the facts alleged in appellant's declarations as true (*Eagle Oil & Ref. Co.* v. *Prentice, supra,* 19 Cal.2d at p. 556), the statutory limitations period for the misrepresentation concerning the savings account funds commenced upon his discovery in August 1978 that the assets were community.[12] Applying that same standard of review, the limitations period for the representation concerning the legal effect of the support provision was tolled until November 1978 when appellant's motion to terminate support was denied. (See § 340.6, subd. (a)(1).) It was then that appellant both discovered the error and suffered "actual injury": the error had become irremediable and the injury had occurred. (*Bell* v. *Hummel & Pappas* (1982) 136 Cal.App.3d 1009, 1017 [186 Cal.Rptr. 688]; *Southland Mechanical Constructors Corp.* v. *Nixen, supra,* 119 Cal.App.3d at p. 433.)

▮▮▮ The question of when a malpractice plaintiff actually discovered or through the use of reasonable diligence should have discovered a wrongful act or omission and suffered injury is generally one of fact.[13] (*Brown* v. *Bleiberg* (1982) 32 Cal.3d 426, 436 [186 Cal.Rptr. 228, 651 P.2d 815].) Since appellant alleged in declarations opposing the motion that he discovered the wrongful acts less than one year before he filed his action, triable issues of material fact were presented on the question of whether the action is barred by section 340.6.[14]

---

[12]Appellant had discovered the "fact" of the representation when respondent made the statement in May 1977. It did not become a *mis*representation, or "wrongful act," until it turned out to be false. (See § 340.6.)

[13]The question becomes a matter of law only where reasonable minds can draw but one conclusion from the evidence. (*Brown* v. *Bleiberg, supra,* 32 Cal.3d at p. 436.)

[14]Appellant also contends that if we agree with respondent that discovery and injury occurred by December 1977 then section 340.6, effective January 1, 1978, does not govern this action because its application would violate the presumption against retroactive application of statutes. (See *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 174 [18 Cal.Rptr. 369, 367 P.2d 865].) We need not reach this question since here we do not determine as a matter of law when appellant discovered or should have discovered the wrongful acts alleged but determine only that the question was one of material fact and thus not amenable to resolution on a motion for summary judgment.

The judgment is reversed.

Caldecott, P. J., and Panelli, J., concurred.

A petition for a rehearing was denied April 24, 1984.